PEOPLE v LUETH

Docket No. 226717. Submitted September 5, 2002, at Lansing. Decided November 1, 2002, at 9:30 A.M.

Jon F. Lueth was convicted by a jury in the Isabella Circuit Court, Paul H. Chamberlain, J., of felony larceny by false pretenses, felony embezzlement by an agent, and misdemeanor violations of rules promulgated by the racing commissioner. The defendant was sentenced to concurrent terms of imprisonment and ordered to pay restitution to Mt. Pleasant Meadows Racetrack (MPM), the victim of the larceny and embezzlement and for whom the defendant had worked as mutuel manager. The defendant appealed.

The Court of Appeals *held*:

1. MCL 431.317(1), which provides: "The pari-mutuel system of wagering upon the results of horse races as permitted by [the Horse Racing Law, MCL 431.301 *et seq.*] shall not be held or construed to be unlawful. All forms of pari-mutuel wagering conducted at a licensed race meeting shall be preapproved by the racing commissioner pursuant to rule or written order of the commissioner," and MCL 431.329, which provides: "A person who willfully aids, assists, or abets the violation of [the Horse Racing Law] or the rules promulgated [thereunder] is guilty of a misdemeanor punishable by a fine of not more than $10,000.00 or by imprisonment for not more than 1 year, or both. For purposes of this section, each day of racing in violation of [the Horse Racing Law] constitutes a separate offense," are not unconstitutionally vague. The statutes give proper notice of what acts are illegal through their reference to rules promulgated by the racing commissioner. The statutes are not unconstitutionally overbroad because they do not extend to legal betting operations under the facts of this case, which concerns only illegal betting. The statutes do not constitute an improper delegation of legislative power to the racing commissioner, for whom standards for the promulgation of rules have been set by MCL 431.307.

2. Sufficient evidence supported the defendant's conviction of larceny by false pretenses over $100. The jury properly found that the defendant used a false pretense, that he intended to deceive, and that MPM relied on a misrepresentation to its detriment from

the testimony of MPM's president indicating shortages in MPM accounts for which the defendant was solely responsible and from evidence indicating that the defendant had allowed a wagerer to wager on account by issuing him vouchers without cash payment and with which the wagerer could make bets.

3. Sufficient evidence supported the defendant's conviction of embezzlement by an agent. The jury properly found from the evidence presented that the defendant had deposited into his personal account money belonging to MPM, with whom he had a relationship of trust.

4. The trial court did not abuse its discretion in allowing an agent of the racing commissioner qualified as an expert in pari-mutuel wagering to testify that the racing commissioner had not approved pari-mutuel wagering on account at MPM and to explain why this was an impermissible form of wagering. The trial court properly could have determined that the expert opinion was necessary to explain pari-mutuel wagering on account, something arguably outside the average juror's realm of knowledge. Harmless error resulted from the agent's testimony that the defendant violated the racing statutes by placing wagers for himself inasmuch as the defendant was acquitted of that charge. The agent, in testifying that MPM's accounting practices were prone to embezzlement, did not remove the finding of guilt on this charge from the province of the jury, but only offered an opinion that it would have been easy for the defendant to embezzle from MPM. No evidentiary error occurred when the prosecution had the agent summarize statements made by the defendant during a pretrial deposition rather than introducing the deposition transcript. The best evidence rule is inapplicable because the contents of the documentary evidence was not in dispute. MRE 1001, 1002. The agent's recollections of the defendant's statements were admissible as party admissions. MRE 801(d)(2). The defendant failed to show that the alleged evidentiary errors concerning the agent's testimony were determinative of the outcome of the trial and required reversal.

5. The defendant waived claims of instructional error when he expressly approved the instructions the trial court gave to the jury.

6. The trial court did not abuse its discretion by refusing to appoint an expert in accounting procedures to assist defense counsel in reviewing MPM's financial records. The defendant failed to show that he could not safely proceed to trial without the proposed expert. The trial court did not err in failing to compel the attendance at trial of a former MPM employee. The trial court did not err in determining that the employee's assistance regarding the correct amount of restitution was not necessary, given the defendant's

speculative assertions regarding the employee's knowledge of the matter.

7. The defendant's being convicted of both larceny by false pretenses and embezzlement does not violate double jeopardy. The larceny statute and the embezzlement statute protect against distinct wrongs, and the convictions were based on different factual predicates.

8. The trial court did not err in imposing both imprisonment and fines as punishment for larceny by false pretenses and embezzlement. MCL 769.5 provides that "whenever it is provided that an offense shall be punished by fine or imprisonment, the court may impose both such fine and imprisonment in its discretion." The trial court did not abuse its discretion in ordering the defendant to pay restitution. Both MCL 769.1a and MCL 780.766(2) required the sentencing court to order the defendant to make full restitution to any victim of the defendant's course of conduct that gave rise to the conviction. The amount ordered as restitution was less than that indicated by the evidence of the amount of victim's loss. The trial court, when determining the amount of restitution, did not err in failing to consider the defendant's ability to pay. At the time some of the crimes were committed, MCL 780.767(1) required a sentencing court to consider the defendant's resources and income and the financial needs of the defendant's dependents. By the time the defendant was sentenced, the statute had been amended to require only that the court consider the loss sustained by the victim. However, a restitution order is governed by the statute in effect at the time of sentencing. Application of the amended statute does not violate the Ex Post Facto Clause of Const 1963, art 1, § 10. The amended statute did not add an obligation to the defendant's burden but instead removed consideration of what may have been used to reduce the defendant's punishment.

Affirmed.

1. CONSTITUTIONAL LAW — DUE PROCESS — STATUTES — VAGUENESS.

A statute may be challenged for vagueness on three grounds: that it is overbroad and impinges on First Amendment freedoms, that it does not provide fair notice of the conduct proscribed, and that it is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether the law has been violated.

2. ADMINISTRATIVE LAW — DELEGATION OF POWERS — STATUTES — STANDARDS — SEPARATION OF POWERS.

The test for determining whether legislation constitutes an unconstitutional delegation of legislative power to an administrative agency

is the "standards test"; the legislation must contain standards for guidance of the agency that are as reasonably precise as the subject matter requires or permits to comply with the constitutional doctrine of separation of powers.

3. CRIMINAL LAW — LARCENY BY FALSE PRETENSES OVER $100.

The felony of larceny by false pretenses over $100 is composed of the following elements: the defendant must have used a pretense or made a false statement relating to either past or existing facts or circumstances; at the time the defendant made or used the pretense, the defendant must have known it to be false; at the time the defendant made or used the pretense, the defendant must have intended to defraud or cheat someone; the person alleged to have been defrauded must have relied on the false pretense made by the defendant; in so relying, that person must have suffered the loss of some money or other valuable thing; and the property that was taken must have had a fair market value that exceeded $100 at the time of the obtaining of the property (MCL 750.218).

4. CRIMINAL LAW — EMBEZZLEMENT BY AN AGENT.

The crime of embezzlement by an agent is composed of the following elements: the money in question must belong to the principal, the defendant must have a relationship of trust with the principal as an agent or employee, the money must come into the defendant's possession because of a relationship of trust, the defendant dishonestly disposed of or converted the money to the defendant's own use or secreted the money, the act must be without the consent of the principal, and at the time of conversion, the defendant intended to defraud or cheat the principal (MCL 750.174).

5. CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

Statutes prohibiting conduct that is violative of distinct social norms can generally be viewed as separate and amenable to permitting multiple punishments.

6. SENTENCES — RESTITUTION.

A restitution order by a sentencing court is governed by the restitution statute in effect at the time of sentencing.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Larry J. Burdick*, Prosecuting Attorney, and *William E. Molner*, Assistant Attorney General, for the people.

*John Groves* for the defendant on appeal.

Before: MARKEY, P.J., and CAVANAGH and R. P. GRIFFIN*, JJ.

PER CURIAM. Defendant appeals as of right his convictions, following a jury trial, of larceny by false pretenses of over $100, MCL 750.218, embezzlement by an agent of over $100, MCL 750.174, and horse racing violations, MCL 431.329.[1] Defendant's convictions were based on charges that he permitted wagering on account, issued vouchers without receiving cash in exchange, wrote "returns" (signifying cash removed and placed in the cash room) and placed them in teller drawers without placing corresponding cash in the cash room, and took cash intended for deposit in the victim's bank, but deposited it in his personal account. Defendant was sentenced to prison for one to ten years for false pretenses, two to twenty years for embezzlement, and one year for the racing violations, to be served concurrently. In addition, defendant was ordered to pay $454,125 in restitution to the victim in this case, Mt. Pleasant Meadows Racetrack (MPM). He appeals his convictions, the order of restitution, and the imposition of both prison terms and restitution for his crimes. We affirm.

I

Defendant challenges the statutes that concern the legality of horse race wagering, MCL 431.317(1) and

---

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

[1] Defendant was also charged with illegally wagering on the results of a horse race while being an employee of the racetrack, in violation of MCL 431.307 and MCL 431.309; however, the jury acquitted him of this charge.

MCL 431.329, as being unconstitutionally vague and overbroad, and claims they violate the doctrine of separation of powers. The relevant statutes read:

> The pari-mutuel system of wagering upon the results of horse races as permitted by this act shall not be held or construed to be unlawful. All forms of pari-mutuel wagering conducted at a licensed race meeting shall be preapproved by the racing commissioner pursuant to rule or written order of the commissioner. [MCL 431.317(1).]
>
> A person who willfully aids, assists, or abets the violation of this act or the rules promulgated under this act is guilty of a misdemeanor punishable by a fine of not more than $10,000.00 or by imprisonment for not more than 1 year, or both. For the purpose of this section, each day of racing in violation of this act constitutes a separate offense. [MCL 431.329.]

Statutes are presumed to be constitutional, and courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent. *People v Rogers*, 249 Mich App 77, 94; 641 NW2d 595 (2001). The presumption of constitutionality may justify a narrow construction or even construction against the natural interpretation of the statutory language. *People v FP Books & News, Inc (On Remand)*, 210 Mich App 205, 209; 533 NW2d 362 (1995); *Lowe v Dep't of Corrections (On Rehearing)*, 206 Mich App 128, 137; 521 NW2d 336 (1994).

Defendant asserts the horse racing statutes are vague because they do not specifically identify what conduct is prohibited, but, instead, reference the rules and orders promulgated by the commissioner. A statute can be found vague if (1) it does not provide fair notice of what conduct is prohibited or required, (2) it is overbroad and impinges on First Amendment freedoms, or (3) it is so indefinite that it confers

unstructured and unlimited discretion on the trier of fact to determine whether the law has been violated. *People v Noble*, 238 Mich App 647, 651; 608 NW2d 123 (1999). Although the statute "cannot use terms that require persons of ordinary intelligence to guess its meaning and differ about its application," the statute is sufficiently definite if its meaning can fairly be ascertained by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words. *Id.* at 652.

Defendant claims that the statutes do not give proper notice of what acts are illegal because they are not identified directly in the statutes.[2] However, a statute is not vague simply because the conduct it proscribes is identified by reference to agency rules rather than directly by the statutory language. See *Ray Twp v B & BS Gun Club*, 226 Mich App 724, 732-733; 575 NW2d 63 (1997). The reference to the rules of the racing commissioner is clear; furthermore, defendant, as a licensee of the commissioner, had full notice of the rules. Thus, the statutes' reliance on the agency's rules is not a basis for finding the statutes vague.

Defendant's assertion that the statutes are overbroad because they "could also extend to legal betting operations" likewise fails. An overbroad statute prohibits protected conduct, primarily conduct protected by the First Amendment. *People v Morey*, 230 Mich App 152, 164; 583 NW2d 907 (1998); *People v McCumby*, 130 Mich App 710, 714; 344 NW2d 338 (1983). The conduct at issue here, wagering on horse

---

[2] Defendant does not challenge the agency rules, and we therefore decline to address them.

races, is not constitutionally protected. See *Berry v Racing Comm'r*, 116 Mich App 164, 171; 321 NW2d 880 (1982). Thus, we examine the challenge in light of the particular facts of this case. *Ray Twp, supra* at 732. The assertion that the statutes "could also extend to legal betting operations" does not apply to the facts of this case; here, we are concerned with illegal betting. We therefore find the statutes are not overbroad.

Defendant also challenges the statutes as an improper delegation of power to an administrative agency, i.e., the office of racing commissioner. "[L]egislation in which power is delegated to an administrative agency must contain language, expressive of the legislative will, that defines the area within which an agency is to exercise its power and authority." *Westervelt v Natural Resources Comm*, 402 Mich 412, 439; 263 NW2d 564 (1978). Thus, to preserve the constitutional separation of powers, the Legislature must provide standards to effectively measure agency compatibility with the legislative will. *Id.* The constitution permits the Legislature to set forth standards that are flexible and practicable enough so that they can be adapted to conditions with which the Legislature cannot deal practically on an individual basis. *Petrus v Dickinson Co Bd of Comm'rs*, 184 Mich App 282, 294-295; 457 NW2d 359 (1990). The criteria used to evaluate whether proper standards have been set are (1) the act must be read as a whole, (2) the act carries a presumption of constitutionality, (3) the standards must be as reasonably precise as the subject matter requires or permits and the preciseness required of the standards will depend on the complexity of the subject, and (4) that the statute satisfies

due process requirements. *Blue Cross & Blue Shield v Governor*, 422 Mich 1, 51-52; 367 NW2d 1 (1985). "Reasonably precise" does not mean specific language is required; the Legislature may provide standards " 'under quite general language, so long as the exact policy is clearly made apparent.' " *West Ottawa Pub Schs v Director, Dep't of Labor*, 107 Mich App 237, 243; 309 NW2d 220 (1981), quoting *GF Redmond & Co v Mich Securities Comm*, 222 Mich 1; 192 NW 688 (1923). To ensure satisfaction of due process requirements, a sufficient totality of safeguards, including "standards," must exist to assure that the public will be protected against potential abuse of discretion at the hands of administrative officials. *Westervelt, supra* at 442-443.

The office of racing commissioner was created by MCL 431.303:

> The office of racing commissioner is created within the department of agriculture. The racing commissioner has the powers and duties prescribed in this act and shall administer the provisions of this act relating to licensing, enforcement, and regulation. The racing commissioner also has those additional powers necessary and proper to implement and enforce this act and to regulate and maintain jurisdiction over the conduct of each licensed race meeting within this state where horse races or pari-mutuel wagering on the results of horse races is permitted for a stake, purse, prize, share, or reward.

In MCL 431.307, the Legislature set forth standards under which the commissioner is authorized to promulgate rules:

> (1) The racing commissioner may promulgate rules pursuant to the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328, for conducting horse racing,

pari-mutuel wagering on horse racing results, and simulcasting. The rules promulgated under this section shall be designed to accomplish all the following:

(a) The governing, restricting, approving, or regulating of horse racing, pari-mutuel wagering on the results of horse races, and simulcasting conducted at licensed race meetings within this state.

(b) The promoting of the safety, security, growth, and integrity of all horse racing, pari-mutuel wagering on the results of horse races, and simulcasting conducted at licensed race meetings within this state.

(c) The licensing and regulating of each person participating in, or having to do with, pari-mutuel horse racing and wagering, and simulcasting at licensed race meetings within this state.

Defendant asserts that the Legislature did not provide reasonably precise standards in the statutes and he claims there are no statutory guidelines for enforcement or oversight and no definition of what constitutes legal pari-mutuel wagering. He argues that the jury is left to decide what is a crime under the statutes, then claims that the racing commissioner has unlimited discretion to decide what conduct is criminal, both creating the law and enforcing it. We disagree.

Wagering on horse races is not an inherent right of the citizens of this state. It is an activity that requires strong police regulation to protect the public interest. *Berry, supra* at 170-171. Thus, it is within the police power of the state to regulate and control this activity to maximize its safety and integrity. *Rohan v Detroit Racing Ass'n*, 314 Mich 326, 347-348; 22 NW2d 433 (1946). Furthermore, the statutes in this case do not give the commissioner unbridled power to arbitrarily decide what forms of wagering are illegal. The Legis-

lature has determined that pari-mutuel wagering is legal and the forms permitted must be properly promulgated as rules or written orders under the Administrative Procedures Act, MCL 24.201 *et seq.* MCL 431.317(1); MCL 431.307. The permitted forms of wagering must promote the safety and integrity of the business. MCL 431.307(1)(b). The statutes, with reasonable precision, express the legislative will and provide adequate standards for this closely regulated enterprise. We find defendant's constitutional challenges to be without merit.

II

Defendant contends that his convictions for false pretenses and embezzlement were not supported by sufficient evidence and were against the great weight of the evidence. We review de novo a claim of insufficient evidence; and a lower court's ruling on a motion for new trial based on the claim that the verdict was against the great weight of the evidence is reviewed for abuse of discretion. *People v Hammons*, 210 Mich App 554, 556; 534 NW2d 183 (1995); *People v Herbert*, 444 Mich 466, 477; 511 NW2d 654 (1993).

### A. FALSE PRETENSES

The elements of the crime of larceny by false pretenses over $100 are as follows: (1) the defendant must have used a pretense or made a false statement relating to either past or then existing facts and circumstances, (2) at the time the pretense was used the defendant must have known it to be false, (3) at the time the pretense was used the defendant must have intended to defraud someone, (4) the accuser must

have relied on the false pretense made by the defendant, (5) because of this reliance that person must have suffered the loss of some money or other valuable thing, and (6) the property obtained by the defendant must have had a fair market value of over $100 at the time of the crime. *People v Peach*, 174 Mich App 419, 422-423; 437 NW2d 9 (1989).

Defendant argues that the prosecution failed to establish by sufficient evidence that defendant used a false pretense, that he intended to deceive, and that MPM relied on a misrepresentation to its detriment. We disagree.

Defendant was promoted in 1996 to the position of mutuel manager at the MPM racetrack. In that capacity, he was in charge of pari-mutuel wagering and all daily financial operations including the deposit of funds in MPM accounts. He arranged the reception of simulcast races from other tracks, and he supervised the tellers who received bets at the MPM racetrack. Defendant was the sole employee in charge of receiving cash, making deposits, and reconciling the accounts daily.

The jury heard testimony by Walter Bay, president of MPM, that he first became aware in August 1997 of a shortage in one account and, later, learned of shortages in other MPM accounts. Bay said he knew that one patron, John Hunter, was a wagerer of large amounts, and Bay learned from defendant that on some days Hunter was responsible for twenty-five to thirty percent of the betting. Bay testified that he had never authorized defendant or anyone else to allow wagering on credit.

At MPM racetrack, when a bet is placed at a teller's window, the teller delivers a ticket to the patron in

exchange for cash or for a voucher that represents cash paid. Evidence in this case showed defendant had tellers print up vouchers that he delivered to Hunter, without requiring cash payment, as a means of allowing Hunter to place wagers on account. Hunter testified that he may have wagered as much as $5 million on account, and believed that after having paid back some of the debt he still owed MPM approximately $235,000.

The scope of false pretense in this case also included the falsification of records to make it appear that cash had been paid for Hunter's vouchers through the preparation of false teller returns and the recording of tickets in the tote machine (a computer terminal), acts that occurred at the time the tellers received tickets and vouchers. Because vouchers are supposed to represent cash, the information fed into the computer was deceptive. Likewise, defendant placed signed returns in the cash drawers when no cash was removed. From this, the jury could infer that defendant was attempting to hide the fact that the drawers did not contain enough cash to account for tickets sold. It was not until an audit by a certified accountant was completed that corporate officers of the MPM racetrack received a report that $545,735.78 was missing from MPM accounts as of November 4, 1997. Taken as a whole this evidence was sufficient to prove the elements of defendant's intentional deception and MPM's reliance on his misrepresentation.

Defendant argued that higher officials of MPM tacitly knew that Hunter was wagering on account and, therefore, not only did the prosecution fail to show an intent to defraud, it also failed to show harm from defendant's actions. However, the question of intent

was a question for the jury as the factfinder. *People v Worrell*, 417 Mich 617, 633; 340 NW2d 612 (1983). The jury heard a number of witnesses who testified that neither Bay nor any other director of MPM was aware that defendant allowed wagering on account by delivering vouchers without requiring cash payment. Moreover, MPM was clearly harmed by the financial loss caused by defendant's actions.

Reviewing the evidence in a light most favorable to the prosecution, we conclude that the evidence was sufficient to allow the jury properly to have found the defendant guilty beyond a reasonable doubt of each element of the offense. The defendant contends also that the verdict was against the great weight of the evidence; however, his arguments involve the same credibility issues raised above. We conclude that the trial court correctly decided not to sit as a thirteenth juror, and we find that defendant has failed to show an abuse of discretion on the part of the trial court in refusing to grant a new trial on this ground.

### B. EMBEZZLEMENT

The elements of embezzlement by an agent, MCL 750.174, are (1) the money in question must belong to the principal, (2) the defendant must have a relationship of trust with the principal as an agent or employee, (3) the money must come into the defendant's possession because of the relationship of trust, (4) the defendant dishonestly disposed of or converted the money to his own use or secreted the money, (5) the act must be without the consent of the principal, and (6) at the time of conversion, the defendant intended to defraud or cheat the principal. *People v Collins*, 239 Mich App 125, 131; 607 NW2d 760

(1999); *People v Wood*, 182 Mich App 50, 53; 451 NW2d 563 (1990).

The prosecution's case of embezzlement rested on the fact that defendant was depositing a great deal of money, from sources other than his income, into his personal bank accounts. Defendant has not challenged the fact that most of these funds came from money that was supposed to be deposited into MPM accounts. He instead claimed that he was only depositing the money into his account because he could not fit the deposit envelope into the after hours slot at MPM's bank. Defendant asserts that the fact that he was writing checks back to MPM refutes the prosecution's claim that he had a fraudulent intent. However, this argument is insufficient to justify reversal of defendant's conviction. From the evidence presented by the prosecution, the jury could have found that defendant initially took the money with the intent to keep it and then later returned a portion after commingling it, either in an attempt to hide the amount he kept or to avoid prosecution. Which witnesses to believe on the question of defendant's intent was a matter for the jury as the factfinder. *Worrell, supra* at 633. We find defendant's argument that the prosecution failed to present sufficient evidence of illegal intent is without merit, as is his claim that the verdict was against the great weight of the evidence.

III

Defendant asserts that his constitutional rights were violated in a number of ways by the testimony of Richard Jewell, an agent of the racing commissioner. According to defendant, Jewell's testimony included legal conclusions and improper editorializing

about what defendant said in his deposition. We review evidentiary questions, when preserved by objection, for an abuse of the trial court's discretion, *People v Smith*, 425 Mich 98, 106; 387 NW2d 814 (1986); when unpreserved, such matters are reviewed for plain error, *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Qualified as an expert in pari-mutuel wagering, Jewell described the racing commissioner's licensing procedures. He explained that the commissioner assigns the license for each track and controls by order the types of wagering that are permissible. Jewell stated that the racing commissioner never authorized wagering on account at MPM. Without objection, Jewell then testified that wagering on account at MPM violated the state's racing laws. Defendant did object later to specific questions posed to Jewell concerning whether defendant's actions violated the law, and these objections were sustained by the trial court who told the parties that it would instruct the jury on the law.

The trial court did not abuse its discretion in allowing Jewell to state that the racing commissioner had not approved pari-mutuel wagering on account at MPM and to explain why this was not a permissible form of wagering. The trial court could properly have found that an expert opinion was necessary to help explain the process by which the commissioner promulgated betting procedures and to explain why wagering on account would not work within the pari-mutuel system in light of the fact that this information arguably fell outside the realm of knowledge of the average juror. *People v Ray*, 191 Mich App 706, 707; 479 NW2d 1 (1991).

Defendant also claims that Jewell's testimony improperly included his conclusion that defendant had violated the racing statutes. However, our examination of the record reveals that Jewell's conclusion concerned whether defendant placed wagers for himself in violation of statute and rule. Although defendant was charged with that offense, the jury found him not guilty, so any error is harmless. See *People v Cash*, 419 Mich 230, 248; 351 NW2d 822 (1984). Furthermore, Jewell's agreement with the prosecution that MPM's accounting practices were "prone to embezzlement," does not equate with an opinion that defendant actually committed embezzlement, only that it would have been easy for him to do so under the circumstances. Thus, this statement did not remove the finding of guilt on this charge from the province of the jury.

Defendant alleges another evidentiary error occurred when the prosecution had Jewell summarize statements defendant made during his pretrial deposition, rather than submitting the documentary "best evidence": the transcript of the deposition. However, the best evidence rule is inapplicable because the contents of the *documentary* evidence were not in dispute. MRE 1002; MRE 1001; *People v Trudeau*, 51 Mich App 766, 772; 216 NW2d 450 (1974). Rather, the transcript of the deposition was presented to Jewell to assist in refreshing his memory; Jewell's recollections of defendant's statements were admissible as party admissions. MRE 801(d)(2). Defense counsel also specifically referenced the deposition in his cross-examination of Jewell. Thus, defense counsel had both the means and the opportunity to fully pur-

sue any discrepancies between Jewell's testimony and the transcribed statements.

Defendant's remaining claims regarding Jewell's testimony involve sustained objections. However, we cannot find that the trial court erred because defendant did not request further instructions at the time. *People v Brown*, 21 Mich App 579, 580-581; 175 NW2d 782 (1970); *People v Cyr*, 113 Mich App 213, 225; 317 NW2d 857 (1982). Furthermore, Jewell's agreement with the prosecution that the accounting practices of MPM were "prone to embezzlement" does not equate with an opinion that defendant actually committed embezzlement, only that it would have been easy for him to do so under the circumstances. Thus, this statement did not remove the finding of guilt on this charge from the province of the jury.

Finally, defendant has not shown that these alleged evidentiary errors merit reversal because it does not appear more probable than not that they determined the outcome of the trial. MCL 769.26; *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). The trial court told the jury twice that it was to consider only the trial court's instructions regarding the law: first, when it sustained defendant's objections and, again, at the end of trial. The court provided specific instructions regarding the proofs that the prosecution was required to make concerning each of the charges against defendant, and told the jury it was to decide the case by applying the law given to it by the court to the facts presented. Because the jury is presumed to follow the court's instructions, *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998), defendant has failed to prove that the jury, more probably than not, simply relied upon Jewell's opinion rather than

reviewing the facts of the case under the standard provided by the trial court in reaching its decision. Moreover, defendant does not discuss what, if any, inaccuracies were related by Jewell during his testimony about defendant's deposition. Defendant has not shown that any error was outcome determinative and, therefore, we find no error requiring reversal.

IV

Defendant next asserts that two instructional errors require reversal. According to defendant, the trial court erred in failing to give sua sponte the jury an instruction on the defense of "reliance on representation," CJI2d 23.12. Defendant also argues that error resulted when the trial court misstated the jury instruction on false pretenses, CJI2d 23.9(d). We disagree. After sending the jury to deliberate, the trial court asked the parties, "Any objections to the jury instructions as read?" Defense counsel answered, "No, your honor." By expressly approving the instructions, defendant has waived this issue on appeal. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

V

Defendant also raises two issues concerning witnesses. First, he asserts that the trial court erred by refusing to appoint an expert in accounting procedures to assist defense counsel in reviewing MPM's financial records. In order to have the trial court appoint an expert witness for an indigent defendant at public expense, the defendant must show that he "cannot safely proceed to a trial" without the proposed witness. MCL 775.15; *People v Herndon*, 246

Mich App 371, 399; 633 NW2d 376 (2001). We review the decision whether to appoint an expert for an abuse of discretion. *Herndon, supra* at 398. An abuse of discretion will be found only when an unprejudiced person, considering the facts on which the trial court acted, would conclude that there was no justification or excuse for the ruling made. *People v Ullah,* 216 Mich App 669, 673; 550 NW2d 568 (1996).

We find that defendant failed to show that he was unable to proceed without an expert accountant. Defendant did not move for appointment of an expert until August 22, 2000, two months after he had notice of the restitution hearing. The trial court and defendant had full opportunity to question the auditor about his report and the accounting procedures, and defendant does not identify what portion of the audit findings or procedures would have been more fully explained by an expert. Defendant did not show to the trial court that he could not safely proceed without his own expert, and we do not find the trial court's decision to be without justification or excuse, especially where the request was made only shortly before the hearing.

Second, defendant argues that the trial court erred by failing to compel the attendance of Bonnie Klumpp, a former employee of MPM. Defendant has failed to demonstrate outcome determinative plain error here. A criminal defendant's right to call witnesses is not absolute. In order to command the presence of an out-of-state witness under MCL 767.93(1), a defendant must make his request in a timely manner and must show that the witness is material. *People v Loyer,* 169 Mich App 105, 112-113; 425 NW2d 714 (1988). Here, defense counsel admitted that Klumpp

was not called by either side as a witness at trial. Moreover, defense counsel conceded that he had not talked to Klumpp to find out what she knew about the case; defendant's assertions about her knowledge were simply speculative. Thus, defendant cannot show error in the trial court's initial decision that her presence would not be necessary to assist in determining the correct amount of restitution. We find no reason to reverse on this ground.

VI

Finally, defendant raises several additional issues concerning his convictions and corresponding punishments. First, he argues that he was improperly subjected to double jeopardy by his concurrent convictions of larceny by false pretenses and embezzlement. A claim of double jeopardy presents a question of law, which we review de novo. *People v White*, 212 Mich App 298, 304-305; 536 NW2d 876 (1995). "Statutes prohibiting conduct that is violative of distinct social norms can generally be viewed as separate and amenable to permitting multiple punishments." *People v Robideau*, 419 Mich 458, 487; 355 NW2d 592 (1984). Double jeopardy does not apply in such cases.

In this case, an examination of the elements of the two offenses confirms the prosecution's theory that double jeopardy does not apply because the statutes are intended to protect against different wrongs, even though both are generally theft offenses. The prohibition against larceny by false pretenses protects against individuals who make affirmative representations in order to trick the victim out of his or her wealth, while the prohibition against embezzlement is designed to protect against situations in which the

agent gains access to the principal's money through a position of trust and either simply steals it from him or attains control of the money through deception. Thus, the elements of embezzlement can be satisfied without the use of deception and the victim does not have to be in a position of trust with the perpetrator in order for the elements of false pretenses to be satisfied. See *People v Beach*, 429 Mich 450, 464; 418 NW2d 861 (1988).

Moreover, defendant's separate convictions were based on different factual predicates, with the identity of the victim the only connection between them. Therefore, there would appear to be no double jeopardy implication because defendant is not facing multiple punishments for the *same* offense. See *People v Shively*, 230 Mich App 626, 631; 584 NW2d 740 (1998).

Defendant next asserts that the trial court erred in imposing both imprisonment and fines as punishments for false pretenses and embezzlement, because the statutes in effect at the time permitted the court to impose a fine "or" imprisonment. Again, we disagree. MCL 769.5 specifically states that "whenever it is provided that an offense shall be punished by fine or imprisonment, the court may impose *both* such fine and imprisonment in its discretion." (Emphasis added.) In light of this language, the trial court did not plainly err in deciding to impose both punishments. *People v Krum*, 374 Mich 356, 362; 132 NW2d 69 (1965).

Defendant also contends, for several reasons, that the trial court's determination of the amount of restitution was erroneous. We disagree. At the time of defendant's sentencing, both MCL 769.1a and MCL 780.766(2) required the sentencing court to order the

defendant to "make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction." The phrase "course of conduct" is to be given a broad construction so that "the defendant should compensate for all the losses attributable to the illegal scheme that culminated in his conviction." *People v Gahan*, 456 Mich 264, 271-272; 571 NW2d 503 (1997).

We find persuasive support for the trial court's decision in the facts at bar. There was ample evidence that the total cost to MPM exceeded $500,000. There is no requirement that defendant personally benefited to that extent, only that his criminal acts caused that amount of loss. *People v Carroll*, 134 Mich App 445, 446-447; 350 NW2d 785 (1984). The court allowed the amount to be offset by credits from payments from other sources, including the amount reimbursed by Hunter. We find no abuse of discretion in the judgment.

Defendant's last issue concerns the trial court's failure to consider his ability to pay when it determined the amount of restitution. At the time at least some of the crimes were committed, the restitution statute, MCL 780.767(1) required the sentencing court to consider "the financial resources and earning ability of the defendant, [and] the financial needs of the defendant and the defendant's dependents." By the time sentencing occurred, however, the statute had been amended and that provision was stricken, allowing the court to consider only the loss sustained by the victims. We find that MCL 780.767(1), as amended, operates in furtherance of a remedy already existing and, therefore, it operates retrospectively. *People v Link*, 225 Mich App 211, 214-215; 570 NW2d 297

(1997); *People v Grant*, 455 Mich 221, 230-231, 240; 565 NW2d 389 (1997). This is in accord with previous cases from this Court and our Supreme Court recognizing that a restitution order is governed by the statute in effect at the time of sentencing. See, e.g., *People v Collins*, 239 Mich App 125, 134, n 8; 607 NW2d 760 (1999); *People v Gahan*, 456 Mich 264, 270; 571 NW2d 503 (1997); *People v Law*, 459 Mich 419, 422, n 5; 591 NW2d 20 (1999); *Grant, supra*, 455 Mich 231, n 11.

We similarly reject defendant's argument that the amended statute violates the Ex Post Facto Clause of the Michigan Constitution, Const 1963, art 1, § 10. The amended language did not add an obligation to defendant's burden, but, instead, removed consideration of what may have been used to reduce defendant's punishment. In sum, the trial court did not err in applying the version of MCL 780.767(1) in effect at the time of sentencing.

Affirmed.