# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SHAWN JAMES JARRETT,

Defendant-Appellant.

UNPUBLISHED
February 16, 2017

No. 330460
Kent Circuit Court
LC No. 15-003042-FC

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

Following a jury trial, the trial court convicted Shawn James Jarrett of second degree murder, MCL 750.317. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to a term of 60 to 90 years' imprisonment. Defendant appeals his conviction by right, arguing that there was insufficient evidence that he committed the crime. We affirm.

This case involves the disappearance and murder of Berta Yolanda Reyes. At about 5:30 a.m. on the morning of April 24, 2014, the victim's husband, Aidi Timoteo Rodas (Timoteo), dropped her off at Neal Mast Greenhouses (Greenhouses), where she worked. As he did, he noticed a tan car parked in the corner of the parking lot.

Defendant also worked for Greenhouses. Defendant's roommate, Cheryl Jones, testified that defendant usually drove her tan car with the license plate "Penny 1." She stated that defendant left for work on April 24, 2014, at about 5:00 a.m. Bank records for a joint account belonging to Jones and defendant show that defendant made a purchase at a gas station up the road from Greenhouses just after 5:00 a.m. on that day.

Defendant clocked in to work at 6:45 a.m., but left at 8:00 a.m., claiming that he was sick. Defendant's roommate testified that defendant called her around 9:00 a.m., stating that he was leaving work. She stated that defendant returned home around 12:30 p.m. and immediately began cleaning the car. She added that defendant stated that he was cleaning dirt from the backseat and that defendant had brought home six to eight plants that day.

Timoteo testified that he got off of work at about 1:00 p.m. on the day in question and went directly to his second job. He continued that, at about 5:00 p.m., he received a telephone call from one of his sons, who said that that the victim had not returned home from work.

-1-

According to Timoteo, he immediately left his job, picked up his two sons at home, and went to search for the victim. Timoteo added that, after learning that the victim's supervisor had not seen the victim that day, Timoteo went home and called the police.

The detective in charge of the case gathered time records for Greenhouses employees and developed a suspect list based on any employee who had recently left early, been fired, or quit. This detective stated that he included defendant on this list because the car defendant drove matched Timoteo's description of the car in the parking lot of Greenhouses on the morning in question and because defendant's time records showed that he clocked in the day of the disappearance at 6:45 a.m., and that he left at about 8:00 a.m.

On or near a service road on Greenhouses's property, officers recovered the victim's broken cellular telephone, telephone battery, and telephone case. Police obtained DNA from the cellular telephone and the telephone case. Katherine Merideth, a forensic scientist for the Michigan State Police, analyzed these items and testified that DNA matching defendant's DNA profile was present on the telephone and telephone case.

Weeks later, construction workers found the victim's body at a construction site near Greenhouses. The body was in an advanced state of decomposition and had suffered significant trauma, presumably from being run over by construction equipment. The medical examiner ruled the victim's death a homicide by unspecified means.

As part of the investigation, the police chemical tested the car that defendant drove and found two spots of blood—one on the driver's side headrest, and one on the rear seat. Merideth tested samples of these spots and testified that DNA obtained from the blood on the headrest matched the DNA profile of the victim. Merideth testified, however, that she was unable to determine the DNA profile of the blood present on the rear seat.

On appeal, defendant argues that there was insufficient evidence to establish that he was the perpetrator of the crime. We review de novo challenges to the sufficiency of evidence. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). We must view "the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Bennett*, 290 Mich App 465, 471-472; 802 NW2d 627 (2010). In applying this standard, we "must draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Cameron*, 291 Mich App 599, 613; 806 NW2d 371 (2011) (internal quotation marks and citation omitted). The standard is the same whether the evidence is direct or circumstantial. Circumstantial evidence and any reasonable inferences flowing from that evidence can prove the elements of a crime. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

To convict defendant of second-degree murder, the prosecution must prove beyond a reasonable doubt: (1) that the victim died; (2) that defendant caused the victim's death; (3) that there was no excuse or justification for defendant causing the victim's death; and (4) that defendant did so with malice. *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.*

A rational jury could conclude that defendant committed the murder. On the morning the victim disappeared, defendant left for work at Greenhouses at about 5:00 a.m. and was at a gas station near Greenhouses just after 5:00 a.m. A car matching the description of the car that defendant drove was the only car in the Greenhouses parking lot when Timoteo dropped off the victim at work at about 5:30 a.m. Defendant clocked in at work at about 6:45 a.m. He then left work at about 8:00 a.m., claiming that he was sick. Once he got home, defendant immediately began cleaning the car he drove. Police found the victim's blood in that car and found defendant's DNA on the victim's broken telephone and its case. Workers found the victim's body in a construction site near Greenhouses.

Although the evidence is circumstantial, viewed in a light most favorable to the prosecution, a rational jury could find beyond a reasonable doubt that defendant murdered the victim. The evidence was sufficient to convict defendant of second-degree murder.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle