# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JOSEPH MOHAMAD HAIDAR,

       Defendant-Appellant.

UNPUBLISHED
November 27, 2018

No. 338439
Wayne Circuit Court
LC No. 16-009729-01-FH

Before: JANSEN, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of five counts of embezzlement ($1,000 or more, but less than $20,000), MCL 750.174(4)(a). Defendant was sentenced to 60 days in jail and two years' probation for each embezzlement conviction, to be served concurrently. We affirm.

## I. RELEVANT FACTS

This case arises from defendant's sale of five vehicles at Five Star Auto Center ("Five Star"), a used car dealership in Detroit, Michigan, owned by Hicham Dabaja. Defendant, a salesperson and the manager of the Detroit location, had worked for the company for about three years. Defendant was the only employee at the Detroit location authorized to sell vehicles and accept payments. Five Star sold vehicles by cash, credit or debit, and financing. When a cash sale was made, Five Star's procedure was to count it in front of the customer, place it in an envelope or rubber band it with a note that specified the date and vehicle sold, and immediately put it in the drop safe. Only Dabaja could access the drop safe.

On February 20, 2015, Dabaja's father suddenly passed away. As a result, Dabaja placed defendant in charge of Five Star's Detroit location during his absence from February 20, 2015, to February 25, 2015. Defendant made two cash sales on February 20, 2015, and three cash sales on February 25, 2015. The RD-108 forms from the cash sales indicate that, on February 20, 2015, defendant sold vehicles to Amyra Hayes and Ryan Hagerty. Hayes purchased a Chevrolet Aveo for $2,164 in cash. Hagerty purchased a GMC Envoy for $3,289 in cash.

On February 23, 2015, Dabaja returned to Five Star and discovered that the drop safe was empty. Defendant informed Dabaja that there were sales on February 20, 2015, and that he put

-1-

the money in the safe. Once again, Dabaja checked the safe, which was still empty. Dabaja testified that defendant explained to him that the money may have gotten stuck in the safe's slot and someone took it. Dabaja stated that he did not question defendant further, and decided to explore the issue more at a later time. On the morning of February 25, 2015, Dabaja briefly returned to Five Star's Detroit location. After Dabaja left, defendant sold vehicles to Kenisha Johnson, Brian Kelly, and Shanika Harris. The RD-108 forms from the sales indicated that Johnson purchased a Dodge Magnum for $4,876 in cash, Kelly purchased a Chevrolet Trailblazer for $4,793 in cash, and Harris purchased a GMC Envoy for $4,952 in cash.[1] A surveillance videotape from Five Star shows a majority of the three cash sales from February 25, 2015. The videotape shows defendant clearly putting the money from the sale to Johnson in his pocket, appearing to put the money from the sale to Kelly in his pocket, and placing the money from the sale to Harris into something off screen, which is against protocol. The tape ends before the sale from Harris is completed.

Before leaving work on February 25, 2015, defendant gave another employee the keys to the dealership. Defendant instructed that employee to open the dealership the next morning, because defendant had just purchased a used BMW and would be late as he needed to register the vehicle first thing in the morning. On February 26, 2015, Dabaja returned to Five Star. Once again, he checked the safe, which was still empty. Defendant ultimately never returned to work.

Dabaja did not successfully contact defendant after February 25, 2015. Defendant blocked Dabaja on Facebook and on his cellular telephone. Defendant's wife also blocked Dabaja on Facebook. However, Dabaja's wife and sister showed Dabaja a Facebook post from defendant's wife where she said, on the night of February 25, 2015, that they were leaving the next day on an unexpected vacation to Virginia to visit defendant's brother. Cheryl Fawaz, defendant's mother-in-law, testified that defendant was suffering financial difficulties during this time, and that she provided about $78,000 in financial assistance to defendant and his wife. She purchased their house, paid their bills, and gave them her old car, a Focus. Dabaja also testified that he had provided defendant with a stroller, car seat, clothes, and food for his child in September 2014.

Ultimately, the trial judge made extensive findings of fact, and found defendant guilty of five counts of embezzlement of $1,000 or more, but less than $20,000, in violation of MCL 750.174(4)(a). This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecution failed to present sufficient evidence to support his embezzlement convictions. We disagree.

This Court reviews a challenge to the sufficiency of the evidence de novo. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When reviewing a challenge to the

---

[1] There was some testimony that Kelly and Harris also paid cash for warranties or various add-ons.

sufficiency of the evidence, we must resolve all conflicts in the evidence in favor of the prosecution. *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). Additionally, circumstantial evidence and all reasonable inferences drawn from circumstantial evidence can constitute satisfactory proof of the crime. We defer to the trier of fact's determination regarding what inferences may be drawn from the evidence presented, as well as "the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Similarly, this Court will not disturb the trier of fact's credibility determinations. *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014).

Defendant was charged and convicted of five counts of embezzlement of property over $1000 but under $20,000 in value. Embezzlement by an agent or employee is prohibited under MCL 750.174 which provides, in relevant part:

> (1) A person who as the agent, servant or employee of another person . . . fraudulently disposes of or converts to his or her own use, or takes or secretes with the intent to convert to his or her own use without the consent of his or her principal, any money or other personal property of his or her principal that has come to that person's possession or that is under his or her charge or control by virtue of his or her being an agent, servant, employee . . . is guilty of embezzlement.
>
> * * *
>
> (4) If any of the following apply, the person is guilty of a felony punishable by imprisonment for not more than 5 years or a fine of not more than $10,000.00 or 3 times the value of the money or property embezzled, whichever is greater, or both imprisonment and a fine:
>
> (a) The money or personal property embezzled has a value of $1,000.00 or more but less than $20,000.00.

This Court has explained that proof of embezzlement under MCL 750.174 requires proof of the following elements:

> (1) the money in question must belong to the principal, (2) the defendant must have a relationship of trust with the principal as an agent or employee, (3) the money must come into the defendant's possession because of the relationship of trust, (4) the defendant dishonestly disposed of or converted the money to his own use or secreted the money, (5) the act must be without the consent of the principal, and (6) at the time of the conversion, the defendant intended to defraud or cheat the principal. [*People v Schrauben*, 314 Mich App 181, 198; 886 NW2d 173 (2016), quoting *People v Lueth*, 253 Mich App 670, 683; 660 NW2d 322 (2002).]

Defendant challenges the sufficiency of the evidence with regard to whether he converted the money to his own use without the consent of Dabaja. In this case, the first three elements are undisputed. As the owner of Five Star, the proceeds of all auto sales belonged to Dabaja. As a

salesperson and manager, defendant had a relationship of trust with Dabaja, which was born from the employer-employee relationship. In fact, defendant was the only employee at Five Star's Detroit location who was authorized to sell vehicles and accept payments. Additionally, any money that would have come into defendant's possession was due to the employer-employee relationship: defendant accepted payment from customers for the sale of vehicles and was supposed to deposit any cash received into a drop safe.

Regarding the fourth element, we conclude that the prosecution did present sufficient evidence to show that "defendant dishonestly disposed of or converted the money to his own use or secreted the money[.]" *Schrauben*, 314 Mich App at 198. Although defendant argues that there was no evidence that he failed to put the money from the five sales into the drop safe, defendant's argument is based on the fact that there are other circumstances besides the alleged theft that could explain the missing money. However, the prosecution is not required to "negate every reasonable theory of innocence, but must only prove its own theory beyond a reasonable doubt in the face of whatever contradictory evidence is presented." *People v Fetterley*, 229 Mich App 511, 517; 583 NW2d 199 (1998).

The prosecution presented evidence that defendant was the only employee authorized to sell vehicles and accept payments. The prosecution also established that five cash sales occurred while defendant was in charge of Five Star by introducing into evidence the RD-108 forms, used to register vehicle sales, for all five sales. These forms include the sale date, vehicle type, purchase price, and customer information. Additionally, defendant is on videotape for the sales to Johnson, Kelly, and Harris.[2] Hagerty also testified that he purchased a vehicle on February 20, 2015 from defendant, which was the same day that Hayes purchased a vehicle based on the RD-108 form presented by the prosecution. Although Hayes did not testify at trial, it is reasonable for a trier of fact to infer that defendant was also Hayes's salesperson because defendant was the only employee authorized to sell vehicles and accept payments at the dealership on that date. Additionally, at trial, defendant testified that he accepted money from the five sales, and placed the cash from all fives sales into the drop safe, which contradicts defendant's contention that he did not make a sale to Hayes. Finally, Dabaja testified that no money from the sales in question was ever found in the drop safe.

With respect to the fifth element, that the money in question was taken without the consent of the principal, the prosecution also affirmatively established that element. Dabaja testified regarding Five Star's procedure for the cash sales of vehicles. Once a cash sale was made, the money was to be counted in front of the customer, placed in an envelope, or kept together with a rubber band with a note that specified the date and the vehicle sold, and was to be immediately deposited into the drop safe which only Dabaja could access. Dabaja never consented to allow defendant to keep any monies from any cash sales of any vehicles.

---

[2] The sales that occurred on February 20, 2015 are not on videotape because the videotape was overwritten.

Finally, the prosecution presented sufficient evidence from which a rational trier of fact could conclude that defendant intended to defraud or cheat Dabaja at the time of conversion. Defendant knew the procedure for depositing cash from cash sales into the drop safe at the time of sale. However, Dabaja never found money from the five cash sales in question in the drop safe. Further, the prosecution presented evidence of defendant's financial struggles, his contemporaneous purchase of a used BMW, and a seemingly spontaneous trip to Virginia on February 26, 2016. When all of the evidence is viewed in a light most favorable to the prosecution, we conclude that the prosecution did present sufficient evidence from which a rational trier of fact could find defendant guilty beyond a reasonable doubt of five counts of embezzlement.

## III. GREAT WEIGHT OF THE EVIDENCE

Finally, defendant argues that the verdict was against the great weight of the evidence. We disagree.

"A verdict is against the great weight of the evidence and a new trial should be granted when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Solloway*, 316 Mich App 174, 183; 891 NW2d 255 (2016) (quotation marks and citation omitted). Generally, a verdict may only be vacated when it is not reasonably supported by the evidence, but rather it is likely the result of "factors outside the record, such as passion, prejudice, sympathy, or other extraneous considerations." *Id*. (quotation marks and citation omitted). Questions regarding credibility are not sufficient grounds for relief "*unless* the testimony contradicts indisputable facts or laws, the testimony is patiently incredible or defies physical realities, the testimony is material and . . . so inherently implausible that it could not be believed by a reasonable juror, or the testimony has been seriously impeached and the case is marked by uncertainties and discrepancies." *Id*. (emphasis in original) (quotation marks and citation omitted).

In this case, the trial court made several findings of fact. The trial court found that during the time period in question, defendant was employed by Five Star as a salesperson and manager. As such, he held a position of trust, meaning that he was responsible for handling money proceeds from the cash sales of vehicles. On February 20, 2015, defendant made two cash sales, which were verifiable by RD-108 forms. Following those sales, based on his position of trust, defendant was obligated to deposit the proceeds from the cash sales into a drop safe. However, defendant did not do so, as no cash was ever recovered from the drop safe by Dabaja following those sales.

The trial court went on to find that on February 25, 2015, defendant made three more cash sales, which were verifiable by RD-108 forms. Again, although defendant was obligated to deposit the proceeds from the cash sales into the drop safe, defendant did not do so, as no cash was recovered from the drop safe following those sales. Additionally, there was "substantial video evidence" showing defendant on February 25, 2015 pocketing money from two of the three sales.

Finally, the trial court found that during this time, defendant was facing significant financial challenges which provided him with motive to embezzle. The trial court recounted the

fact that defendant had testified on his own behalf that he did not take any of the sale proceeds, however the trial court did not find defendant's testimony to be credible. On December 26, 2015, defendant suddenly disappeared, which was "further evidence of his illegal conduct." Based on the "totality of the evidence presented in this case," the trial court found defendant guilty on all five counts of embezzlement.

Based on our review of the lower court record, we conclude that the trial court's findings are supported by the evidence. Therefore, defendant has failed to establish that the evidence "preponderated heavily against the trial court's verdict." *Solloway*, 316 Mich App at 184. Therefore, defendant's claim that the verdict was against the great weight of the evidence must fail.

Affirmed.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello