*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JILL ANN TUCKER,

      Defendant-Appellant.

UNPUBLISHED
January 24, 2019

No. 338514
Livingston Circuit Court
LC No. 2016-023886-FH

---

Before: BOONSTRA, P.J., and JANSEN and GADOLA, JJ.

BOONSTRA, P.J. (*dissenting*).

I respectfully dissent. In my view, the best evidence rule is not implicated in this case because the content of the photographs in question was not at issue.

The best evidence rule applies to attempts to "prove the contents of a writing, recording, or photograph." MRE 1002. The contents of the challenged evidence must be important to the case; the best evidence rule does not apply if the "writing, recording, or photograph is not closely related to a controlling issue." MRE 1004. Further, the contents of the evidence must be in dispute. See *People v Leuth*, 253 Mich App 670, 686; 660 NW2d 322 (2002), citing *People v Trudeau*, 51 Mich App 766, 772; 216 NW2d 450 (1974).

Defendant was convicted in part under MCL 750.411s (sometimes called the "cyberstalking" statute[1]), which provides in relevant part:

(1) A person shall not post a message through the use of any medium of communication, including the internet or a computer, computer program, computer system, or computer network, or other electronic medium of communication, without the victim's consent, if all of the following apply:

---

[1] *TM v MZ*, 501 Mich 312; 916 NW2d 473 (2018).

(a) The person knows or has reason to know that posting the message could cause 2 or more separate noncontinuous acts of unconsented contact with the victim.

(b) Posting the message is intended to cause conduct that would make the victim feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(c) Conduct arising from posting the message would cause a reasonable person to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(d) Conduct arising from posting the message causes the victim to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

The cyberstalking statute says nothing about the *content* of the message; rather, subsections (1)(a) and (1)(b) refer to the state of mind of the person posting the message, while (1)(c) and (1)(d) refer to "conduct arising from posting the message."[2] The prosecution was not required to prove the content of the photographs that defendant attached to a group text message in order to prove its case. Rather, the prosecution had to prove that the victim suffered emotional distress and felt "terrorized, frightened, intimidated, threatened, harassed, or molested" and that a reasonable person would have felt the same. What was therefore at issue was not the content of the photographs per se, but rather the effect on the victim of conduct arising from defendant's posting of a text message disseminating those photographs, and the expected effect of that conduct on a reasonable person.

The victim testified that she did in fact suffer emotional distress when she learned that some or all of her male co-workers had viewed photographs that were personal and meant only for her and her boyfriend and concerned their private romantic life.[3] She was entitled to testify

---

[2] Defendant's conviction for use of a computer to commit a crime, MCL 752.796(1), MCL 752.797(3)(e), was premised on her unlawful transmission of a text message, including photographs of the victim, and therefore rises and falls, for purposes of this appeal, with her conviction for unlawful posting of a message, MCL 750.411s.

[3] The victim's testimony in this regard was supported by that of other witnesses as well. Lawrence Shelly testified that the victim became "extremely upset" when he showed her the photographs. The victim ultimately resigned from her place of employment. And several of the victim's coworkers testified that the pictures made them uncomfortable and were inappropriate for a group message to co-workers; for example, Ryan Gates testified that he was "concerned" about why he had received the messages, that it made him "extremely uncomfortable," and that the following days at work were "extremely awkward" and "really tense." Shelly found it concerning and "kind of embarrassing" to have received the group text message. Shelly further testified that he told the victim that he did not want to be associated with the company "if they were going to be acting like this" in sending these kinds of messages. Donald Clark testified that he found it "odd," "weird," and "unacceptable" to have received the group text message.

to that fact regardless of whether a writing or photograph may have supported her testimony or independently proved or supported a finding of emotional distress. *Lund v Starz*, 355 Mich 497, 501-502; 94 NW2d 912 (1959). The victim in this case was obviously present at the taking of the photographs, and was later shown those photographs by several of her co-workers as appended to a text message. She testified that she remembered taking the photos and storing them on her phone, and later recognized the photos as the ones she had taken and stored on her phone. Her general description of those photographs and of the effect on her of their dissemination did not implicate the best evidence rule. "There is no general rule that proof of a fact will be excluded unless the proponent furnishes the best evidence in his or her power." Gillespie, Michigan Criminal Law & Procedure (2d ed), § 9:28. "Where the event itself does not take the form of a writing [or photograph], but is only put into writing [or photographic form] incidentally, the rule does not apply and the witness may give oral testimony regarding the event." *Id.*[4]

Although some of the witnesses generally characterized the photographs as "nude" or "naked," the prosecution was not required to prove what, specifically, the photographs depicted in order to prove its case. Moreover, the photographs need not have depicted the victim as "nude" or "naked" in order for the elements of MCL 750.411s to have been satisfied. And defendant in any event never argued that the pictures did not show the victim as described, and defendant therefore did not place the content of the photographs at issue.[5] I would accordingly conclude that the witnesses' and victim's descriptions of the photographs as "nude," "naked," or

---

[4] For example, if a defendant was charged with perjury and an element of proof necessary for convicting the defendant was that he or she had made a false statement while testifying under oath, a copy of a transcript or audio recording could be introduced to serve as evidence of the statement, but the existence of the transcript or recording would not in any event foreclose a witness who was in the courtroom when the utterance occurred from testifying from memory that he or she had heard the purportedly false statement. See Gillespie, Michigan Criminal Law & Procedure (2d ed), § 9:28.

[5] The trial court also instructed the jury that the content of the photographs alleged to have been sent by defendant in a group text message could only be proved by an "actual photograph or other legally admissible evidence" and reminded the jury that the actual photographs were not in evidence. Defendant agreed to this instruction. Although defendant now takes issue with this instruction, in my view it merely reminded the jury of a weakness in the prosecution's case—a lack of documentary evidence that the pictures attached to the group text had even existed. And although the jury was instructed regarding how the content of the photographs could be proved, it was not instructed that proof of the content of the photographs was an element of the crimes for which defendant was charged, or that lack of proof of such content was a defense to those charges.

something similar did not violate the best evidence rule, because the exact content of the photographs was simply not at issue.[6] See *Leuth*, 253 Mich App at 686.

I therefore find no error in the trial court's admission of witness testimony concerning the general nature of the photographs and of the effect on her of defendant's dissemination of them in a group text message. Accordingly, I would affirm the trial court's judgment, in accordance with the jury's verdict, on defendant's conviction under MCL 750.411s and MCL 752.796(1), MCL 752.797(3)(e).

Additionally, even if I were to agree with the majority with regard to the admission of testimony relating to the photographs, I discern no basis for reversing defendant's interfering with a crime report conviction, MCL 750.483a(1)(c), based on the best evidence rule. Defendant's conviction for interfering with a crime report arose from text messages and photographs sent to Officer Ickes. Even though the allegedly nude photographs of the victim were not presented to the jury, defendant's text messages advised Officer Ickes not to trust the victim's testimony in defendant's criminal case, described the victim as "a snake" who had "played" both Ickes and defendant, and said that the victim was "going to be followed 24/7" by defendant's private investigators, that the victim was "going to go into the system and she's going to get f****d hard, and not the good way" and that the victim was defendant's "enemy." Defendant argued that these text messages should not have been admitted because they were "screenshots" rather than originals, and that their admission was therefore in violation of MRE 1002. I would conclude that a "screenshot" is simply a photograph of a text message or other information displayed on a telephone's screen, and is, if properly authenticated, admissible as a "duplicate" of the original text message. See MRE 1001(4); MRE 1003.

I would also find that the prosecution properly authenticated the screenshots. The proponent of evidence must authenticate the evidence before it can be admitted. *People v McDade*, 301 Mich App 343, 352; 836 NW2d 266 (2013). Authentication requires sufficient proof that the evidence is what the proponent claims it to be. MRE 901(a).

Officer Ickes testified that defendant sent him the text messages, along with photographs, and that he deleted the photographs after viewing them. Officer Ickes testified that the messages came from defendant's number and that her photograph and name appeared above the messages,

---

[6] I would also note that different people could well reach different conclusions about whether to describe a photograph as "nude" or "naked." For example, if a person depicted in a photograph was in a bathtub and could be inferred to be nude, but was not displaying any part of his or her body that could not be bared on a public street without embarrassment, would every person who viewed the photo call it a "nude" photo? It strikes me, although I do not rest my dissent on this basis, that the characterizations by the witnesses of the photographs as "nude" may well have been their lay opinions, which were "rationally based" on their perceptions and "helpful to a clear understanding" of their testimony concerning why they acted the way they did. See MRE 701. If so, that would provide further support for my contention that "proof" of the contents of the photographs (i.e. that they depicted the victim naked) was not essential here—the prosecution need not "prove" the opinion of every lay witness.

thereby identifying her phone as the one from which the messages had been sent. Further, Officer Ickes testified that he believed, based on the content of the messages, that defendant had authored them; Ickes, of course, was familiar with defendant's manner of speaking and texting, having been romantically involved with her for over a year. Evidence may be authenticated by testimony of a witness with knowledge that the evidence is what it is claimed to be, or by content and distinctive characteristics that provide proper identification. MRE 901(b)(1), (4). I would find that Officer Ickes's testimony satisfied this requirement.

Although defendant argues that the text message record is incomplete because Officer Ickes deleted certain texts from the conversation, "proposed evidence need not tell the whole story of a case, nor need it be free of weakness or doubt." *People v Berkey*, 437 Mich 40, 52; 467 NW2d 6 (1991). The fact that the message record was incomplete did not mean that it could not be authenticated. Defendant was not prevented from inquiring about deleted messages while cross-examining Ickes or from presenting evidence that messages had been deleted.

Because defendant only presents MRE 1002 and authentication arguments regarding the admission of defendant's text messages to Officer Ickes, and because those messages, even without the full text message conversation or the accompanying photographs of the victim, provided a sufficient basis on which to convict defendant of interfering with a crime report,[7] I would affirm that conviction regardless of whether I agreed with the majority regarding the application of the best evidence rule to the testimony relating to the photographs.

For these reasons, I would affirm defendant's convictions.

/s/ Mark T. Boonstra

---

[7] MCL 750.483a(1)(c) prohibits an individual from retaliating or attempting to retaliate "against another person for having reported or attempted to report a crime . . . ." Retaliation includes threats to kill, injure, or cause property damage to any person. MCL 750.483a(1)(c)(*ii*). Defendant's messages to Officer Ickes could easily be read as threats to cause injury to the victim, including by sexual assault.