# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DONALD RAY HOLLOWAY,

        Defendant-Appellant.

UNPUBLISHED
February 23, 2016

No. 323736
Oakland Circuit Court
LC No. 2014-250369-FH

---

Before: CAVANAGH, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of false pretenses of $1,000 or more but less than $20,000, MCL 750.218(4)(a). Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 20 months' to 20 years' imprisonment. We affirm.

## I. FACTUAL BACKGROUND

On July 24, 2013, Shari Secor left two Cartier watches requiring repairs at Saks Fifth Avenue ("Saks") at Somerset Mall in Troy, Michigan, with Terri Gorgis, the Cartier Brand Ambassador for Saks. Only one of the watches is at issue in this case. Gorgis completed a repair ticket that delineated Secor's personal information and the requested repair. For the repair to be completed, the watch needed to be shipped to New York so that it could be opened by a certified Cartier watchmaker. Gorgis informed Secor that she would contact her after the watch was returned to Saks in a few weeks.

On September 16, 2013, defendant went to Saks, allegedly to retrieve a piece of jewelry that his fiancé, Shelley Barnes, had bought for him but left at the store for an adjustment. Defendant told the Saks sales clerk, Carolyn Pudlo, that he was picking up a repair item. According to defendant, when Pudlo asked for the name under which the item was listed, he said, "Shelley." However, Pudlo testified that defendant responded "Shari Secor," explaining that he was Secor's husband. Pudlo then retrieved a unisex Cartier watch, valued at $4,950, which belonged to Shari Secor. Defendant presented his driver's license as requested, and Pudlo listed "Donald R. Holloway" and defendant's driver's license number on the repair ticket in order to document who had retrieved the watch. Defendant tried on the watch and asked Pudlo to adjust the sizing of the watch. Pudlo then asked Gorgis to help defendant, at which time

-1-

defendant again stated, this time to Gorgis, that Secor was out of town and he was her husband. Defendant then left Saks wearing the watch.

Defendant testified at trial that he returned to Saks the next day to return the watch. However, because Pudlo was not working that day, he decided to keep the watch until the matter could be resolved.

On September 26, 2013, Secor called Saks to see if her watch repairs had been completed. Pudlo told Secor that her husband had already picked up one of the watches, at which time Secor indicated that she was unmarried.

Troy Police Detective Ryan Whiteside investigated the incident. He ultimately determined that it was defendant who picked up Secor's watch, and the detective called defendant to ask him about the watch. Defendant agreed to return the watch, and he brought it to the police station the next day. Defendant told Whiteside that his brother's friend Troy had given him a name and instructed him to pick up a watch from Saks, but he could not recall the name that he was given. Defendant also admitted that he had altered his driver's license number on the repair ticket.[1] At trial, however, defendant testified that he fabricated the story regarding Troy because he was confined in a police interrogation room and "felt threatened." He also claimed that he lied in a statement that he wrote at the police station, writing down information that he thought Whiteside wanted to hear instead of the truth because he wished to go to work and avoid arrest.

## II. ADMISSION OF PREVIOUS CONVICTION AND PRIOR BAD ACTS

Defendant first argues that the trial court erred in admitting evidence of his past conviction of larceny in a building and various prior bad acts because the evidence was unfairly prejudicial and violated his right to a fair trial. We disagree.

### A. STANDARD OF REVIEW

We "review[] for an abuse of discretion the trial court's decision to admit or exclude evidence," *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014), as well a trial court's decision regarding "whether a prior conviction involving a theft component may be used to impeach a defendant," *People v Meshell*, 265 Mich App 616, 634; 696 NW2d 754 (2005). "[A] trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *Lane*, 308 Mich App at 51 (footnotes omitted). We review *de novo* "the preliminary questions of law surrounding the admission of evidence, such as whether a rule of evidence bars admitting it." *Id*.

### B. LARCENY IN A BUILDING CONVICTION

Defendant first contests the trial court's admission of his 2013 larceny in a building

---

[1] This alteration was corroborated by surveillance video.

conviction for impeachment purposes under MRE 609.[2] We reject defendant's claim.

MRE 609 provides that "evidence that [a] witness has been convicted of a crime shall not be admitted" "[f]or the purpose of attacking the credibility of [the] witness" unless the offense fulfills several requirements. Evidence of a prior conviction may be admissible during cross-examination if the crime (1) contained an element of dishonesty or false statement, or (2) contained an element of theft, was punishable by imprisonment in excess of one year, "has significant probative value on the issue of credibility," and, if the defendant is the witness, "the probative value of the evidence outweighs its prejudicial effect." MRE 609(a)(1), (2).

There is no dispute that defendant's 2013 larceny in a building conviction contains an element of theft, see MCL 750.360; *People v Sykes*, 229 Mich App 254, 278; 582 NW2d 197 (1998), and was punishable by imprisonment of more than one year, see *People v Snyder*, 301 Mich App 99, 106 n 1; 835 NW2d 608 (2013). However, defendant asserts that the prior conviction was not significantly probative on the issue of credibility, and the prejudicial effect of the conviction outweighed its probative value.

To determine the probative value of a conviction, the trial "court shall consider only the age of the conviction and the degree to which a conviction of the crime is indicative of veracity." MRE 609(b). We have recognized that, in general, theft crimes are only minimally probative of a defendant's credibility and moderately probative of a defendant's veracity, but we have also recognized that recent convictions are more probative than older convictions. *Snyder*, 301 Mich App at 106. Here, defendant's larceny in a building conviction occurred in the same year as the false pretenses charge at issue, and only 18 months prior to trial, which gives the conviction significant probative value under the circumstances of this case. See *id.* at 108.

Defendant argues that even if the conviction was moderately probative of his credibility or veracity, "its probative value was far outweighed by its prejudicial effect on [his] trial." To determine prejudicial effect, "the court shall consider only the conviction's similarity to the charged offense and the possible effects on the decisional process if admitting the evidence causes the defendant to elect not to testify." MRE 609(b). Contrary to defendant's claims, his larceny in a building conviction was not strikingly similar to the false pretenses charge at issue in this case. Although larceny in a building, MCL 750.360, and false pretenses, MCL 750.218(4)(a), include some common components, the offenses also include distinctively different elements. Compare *Sykes*, 229 Mich App at 278 (delineating the elements of larceny in a building), with *People v Lueth*, 253 Mich App 670, 680-681; 660 NW2d 322 (2002) (delineating the elements of larceny by false pretenses). Further, the circumstances of defendant's larceny in a building conviction were not explained at trial, so the prejudicial effect of the prior conviction was not increased by the admission of evidence that would have made the offenses appear especially similar to the jury.[3] Moreover, there is no indication that the second

---

[2] Defendant does not contest on appeal the trial court's admission of his prior false pretenses convictions under MRE 609.

[3] Defendant contends that the circumstances of his prior conviction for larceny in a building were nearly identical to the facts of the instant case, such that admission of the prior conviction was

factor, i.e., "the possible effects on the decisional process if admitting the evidence causes the defendant to elect not to testify," MRE 609(b), is implicated here, or that the evidence was particularly prejudicial in light of its effect on defendant, because defendant did, in fact, testify. Stated differently, there was no effect on the decisional process in this regard because the prior conviction did not prompt defendant to refrain from testifying.

Thus, the probative value of defendant's prior conviction outweighed its prejudicial effect, and the trial court's decision to admit the prior conviction pursuant to MRE 609(a) was not outside the range of principled outcomes. See *People v Johnson*, 474 Mich 96, 103; 712 NW2d 703 (2006) (finding admission pursuant to MRE 609 proper in analogous circumstances).

Defendant also argues that the trial court failed to properly consider on the record the factors identified in MRE 609. "[T]he trial court's failure to articulate on the record its analysis of the[] factors [under MRE 609] does not require reversal if the trial court was aware of the pertinent factors and of its discretion." *Meshell*, 265 Mich App at 638. The record reveals that the court considered the requirements of MRE 609(b) by addressing the age of the crime, the extent to which the crime was indicative of veracity, and the similarity of the prior conviction to the instant offense. Although the trial court did not analyze the impact that the admission of the prior conviction could have on defendant's decision to testify, it did state that it was aware that defendant may not testify. Accordingly, it is logical to infer that the court realized that its decision might affect defendant's decision. Further, the trial court's ruling demonstrated that it knew that the admission of the past conviction was discretionary and was aware of the factors necessary for admission.

Therefore, any deficiency in the trial court's articulation of the factors under MRE 609 does not warrant reversal.[4] See *id*.

## C. PRIOR BAD ACTS

---

unfairly prejudicial pursuant to MRE 609(b). Although the prosecutor asked numerous questions regarding defendant's prior bad acts involving stolen layaway receipts in Sears stores, the circumstances of defendant's previous larceny in a building conviction were not specifically described at trial or clarified anywhere in the lower court record. Notably, in making this argument on appeal, defendant provides no citation to the lower court record and instead proffers, as an exhibit on appeal, a police report allegedly related to the incident giving rise to his larceny in a building conviction. The police report is not present in the lower court record received on appeal, and we decline to consider it. "[I]t is impermissible to expand the record on appeal." *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999).

[4] To the extent that defendant asserts that the trial court's reasoning on the record improperly conflated the requirements of MRE 609 and MRE 404(b), we note that the parties concurrently presented their arguments regarding the admission of defendant's prior convictions under MRE 609 and prior bad acts under MRE 404(b). As such, it is apparent that (1) the trial court's ruling was in response to, and a product of, the simultaneous arguments of the parties, and (2) it addressed the admission of the evidence under both rules, even though it only expressly mentioned MRE 609.

Defendant also objects to the admission of prior act evidence regarding incidents involving stolen layaway receipts that defendant returned to Sears for cash. Under MRE 404(b), evidence regarding other crimes, wrongs, or acts is admissible if (1) it is offered for a proper purpose, (2) it is relevant to a factual issue of consequence at trial, and (3) the probative value of the evidence is not substantially outweighed by the potential for unfair prejudice under MRE 403.[5] *People v Sabin (After Remand)*, 463 Mich 43, 55-56; 614 NW2d 888 (2000), citing MRE 104(b), MRE 402, MRE 403, and MRE 404(b). Defendant does not contest whether the prior act evidence was offered for a proper purpose, or whether the evidence was relevant to a material factual issue. Rather, he only asserts that the evidence was unfairly prejudicial and should have been excluded by the trial court pursuant to MRE 403.

Under MRE 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." To determine whether unfair prejudice exists for purposes of MRE 404(b), a court must consider "whether the danger of undue prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision[s] of this kind under Rule 403." *Sabin*, 463 Mich at 55-56 (alteration in original).

In *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998), the Michigan Supreme Court explained:

> Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury. In the context of prior bad acts, that danger is prevalent. When a juror learns that a defendant has previously committed the same crime as that for which he is on trial, the risk is severe that the juror will use the evidence precisely for the purpose that it may not be considered, that is, as suggesting that the defendant is a bad person, a convicted criminal, and that if he did it before he probably did it again. Because prior acts evidence carries with it a high risk of confusion and misuse, there is a heightened need for the careful application of the principles set forth in MRE 403. [Quotation marks and citations omitted.]

See also *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005) ("This unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." [Quotation marks and citation omitted.]).

Here, the prior acts evidence was tremendously probative in light of defendant's claim that he acquired the watch by mistake. Additionally, defendant never acknowledged that he committed any of the prior bad acts referenced by the prosecution. Instead, he either responded that he did not remember whether the incidents occurred or denied the incidents all together. Even though this line of questioning presented a danger of prejudice, there is no indication that

---

[5] In addition, "the trial court, upon request, may provide a limiting instruction under MRE 105." *People v Sabin*, 463 Mich 43, 56; 614 NW2d 888 (2000).

the jury attributed undue or preemptive weight to the prosecution's questions regarding defendant's prior bad acts. Additionally, to the extent that there was a risk that the jury presumed that the prior bad acts occurred solely from the prosecution's questions, this risk was alleviated by the trial court's instructions that the jury may only consider properly admitted evidence in deciding the case, and that the lawyers' questions are not evidence. "[J]urors are presumed to follow their instructions." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

Moreover, even if the trial court abused its discretion in admitting the prior bad acts under MRE 404(b)—or if the prosecutor's questions and defendant's noncommittal answers arose, on their own, to a level of unfair prejudice under MRE 403—such an error would be harmless. "[A] preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (quotation marks omitted). In light of the overwhelming evidence supporting the jury's verdict, it does not affirmatively appear more probable than not that the admission of defendant's prior bad acts affected the trial's outcome.

Finally, defendant's claim related to the trial court's failure to expressly weigh the prejudicial nature of the evidence on the record also fails. Even though it did not explicitly weigh the prejudicial impact of the evidence on the record, the trial court expressly considered the evidence's probative value, the similarity of the prior acts to the charged offense, and the proper purpose of the evidence. In *People v Gaines*, 306 Mich App 289, 302 n 8; 856 NW2d 222 (2014), we rejected the same argument that defendant raises here, stating, "Defendant claims the trial court failed to conduct its balancing of prejudicial effect and probative value under MRE 403 on the record, but a trial court need not state on the record how it balanced the prejudicial effect and probative value." Furthermore, when a trial court fails to state on the record its reasons for admitting evidence, we will affirm the evidentiary ruling if the right result was reached. *People v Watson*, 245 Mich App 572, 582; 629 NW2d 411 (2001).

Thus, we reject defendant's evidentiary claims.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he received ineffective assistance of counsel because his trial counsel failed to request M Crim JI 4.11, an instruction that would have limited the jury's consideration of his prior criminal acts to a particular purpose, and M Crim JI 5.1, an instruction that would have limited the jury's consideration of his prior conviction for impeachment purposes only. We disagree.

### A. STANDARD OF REVIEW AND APPLICABLE LAW

Because a *Ginther*[6] hearing was not held in the trial court, our review of defendant's

---

[6] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

ineffective assistance of counsel claim is limited to mistakes apparent from the record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008), citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

In order to prove that counsel provided ineffective assistance, a defendant must demonstrate that (1) " 'counsel's representation fell below an objective standard of reasonableness,' " and (2) defendant was prejudiced, i.e., "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669-671; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A defendant must also show that the result that did occur was fundamentally unfair or unreliable." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "Effective assistance of counsel is presumed," and a defendant bears a heavy burden of proving otherwise. *Petri*, 279 Mich App at 410.

### B. ANALYSIS

Defendant has failed to rebut the strong presumption that defense counsel's performance constituted sound trial strategy. See *Petri*, 279 Mich App at 410. During his closing argument, defense counsel argued that the jury should not consider defendant's prior criminal acts *at all*. This argument was more stringent than the limitations in both M Crim JI 4.11 and M Crim 5.1, as both instructions permit the jury to consider prior bad acts or prior convictions for one or more limited purposes. Accordingly, defense counsel's failure to request a limiting instruction was consistent with his clear strategy to downplay defendant's prior criminal acts and minimize the purposes for which the jury was permitted to consider the evidence. See, e.g., *People v Rice*, 235 Mich App 429, 444-445; 597 NW2d 843 (1999). Whether to request a particular jury instruction is a matter of trial strategy, see *People v Gonzalez*, 468 Mich 636, 645; 664 NW2d 159 (2003); *People v Barker*, 161 Mich App 296, 304; 409 NW2d 813 (1987), and we will not second-guess counsel on matters of trial strategy, nor assess defense counsel's performance with the benefit of hindsight, *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Thus, it was not unreasonable for counsel to refrain from requesting a limiting instruction so that he could advance such an argument, without a contradictory instruction from the court. Accordingly, defendant has failed to establish that defense counsel's performance fell below an objective standard of reasonableness. See *Vaughn*, 491 Mich at 669-671.

Moreover, even if we assume, arguendo, that defendant established the first prong of the test, defendant has failed to show that he was prejudiced by defense counsel's performance. The prosecutor's statements during his closing and rebuttal arguments concerning the purposes for which the jury should consider defendant's prior conviction and prior bad acts presented, in effect, the same instructions as those in M Crim JI 4.11 and M Crim JI 5.1. Even though the trial court properly instructed the jury that the court, not the attorneys, is responsible for instructing the jury on the law, it is significant that the party utilizing the evidence expressly advocated the restricted use of that evidence for proper purposes. Further, given the magnitude of the evidence against defendant, we cannot conclude that there is a reasonable probability that defense

counsel's failure to request a limiting instruction affected the outcome of the proceedings. See *Vaughn*, 491 Mich at 669-671.

## IV. PROSECUTORIAL MISCONDUCT

Next, defendant alleges several instances of prosecutorial misconduct. We reject defendant's claims.

### A. STANDARD OF REVIEW AND APPLICABLE LAW

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Except as indicated below, all of defendant's claims of prosecutorial misconduct are unpreserved. "Review of alleged prosecutorial misconduct is precluded unless the defendant timely and specifically objects, except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *Unger*, 278 Mich App at 234-235.

When a claim of prosecutorial misconduct is preserved, we review the issue *de novo* "to determine whether the defendant was denied a fair and impartial trial." *Bennett*, 290 Mich App at 475. However, we review unpreserved issues of prosecutorial misconduct for plain error affecting substantial rights. *Id*. at 475-476, citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To demonstrate such an error, the defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights," which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. Further, [this Court] cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476 (quotation marks and citations omitted; alteration in original).

We review prosecutorial misconduct claims on a case-by-case basis, examining the prosecutor's remarks in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010); *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007). "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Dobek*, 274 Mich App at 70.

### B. ELICITATION OF IMPROPER WITNESS TESTIMONY

Defendant first argues that the prosecutor improperly questioned Secor regarding her feelings about the incident. The record reveals that Secor only responded, at this point in her testimony, that she was angry at and frustrated with Saks, not defendant. Accordingly, there is no indication that this question denied defendant a fair trial or seriously affected the fairness, integrity, or public reputation of judicial proceedings. See *Bennett*, 290 Mich App at 465.

Next, defendant argues that the prosecutor improperly questioned Secor regarding whether she conspired with defendant "in order to get a better watch out of Saks," which elicited Secor's reply that "[she] can afford [her] own watches, so no." Defendant argues that the

prosecutor's question prompted improper testimony that raised an impermissible inference between defendant's financial status and guilt or innocence. See *People v Johnson*, 393 Mich 488, 496-497; 227 NW2d 523 (1975). However, it is apparent from the context of this question that the prosecutor intended to establish that Secor was not involved in a conspiracy to defraud Saks for the price of the watch. There is absolutely no indication that this exchange was designed to cause, or actually caused, the jury to draw a connection between defendant's financial circumstances and the instant offense, as Secor's statement did not, in fact, provide any information regarding defendant's financial status. Likewise, Secor's unresponsive answer regarding her own ability to afford watches is not a basis for finding prosecutorial misconduct. "Unresponsive answers from witnesses are generally not prosecutorial error," and there is no indication that the prosecutor knew in advance that Secor would provide this answer. *People v Jackson*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 322350); slip op at 8.

Defendant also challenges the prosecutor's question regarding whether the watch had sentimental value, to which Secor responded: "Yes, it did. I'm trying very hard to contain myself right now. Yes, I can't stand thieves. So yes I'm very upset right now." It appears from the record that the prosecutor asked this question to explain why Secor was emotional during her testimony. "[A]sking witnesses about how they are feeling while testifying can be relevant to their credibility." *People v Bailey*, 310 Mich App 703, 722; ___ NW2d ___ (2015), citing MRE 401 and MRE 607. Further, we find no basis for concluding that Secor's unresponsive statement that she "can't stand thieves"—which defendant characterizes as an opinion regarding his guilt or innocence—was prosecutorial error. See *Jackson*, ___ Mich App at ___; slip op at 8.

Lastly, defendant raises a preserved claim that the prosecutor committed misconduct when, on re-direct examination, he asked Secor if she was frustrated and annoyed with defendant, which elicited the following responses: "Absolutely. I mean it's bad enough to be a thief, but you got to be a liar too," and, "I'm annoyed that my watch has been stolen, yes. I mean[,] I'm the victim here." Defendant asserts that Secor's emotions were irrelevant and that her statements constituted impermissible opinions regarding defendant's guilt and credibility.

However, when the questions are viewed in context, the record reveals that Secor exhibited an increasingly frustrated, annoyed, and hostile demeanor throughout her testimony, especially in response to defense counsel's cross-examination questions. As such, it is clear that the prosecutor's questioning was designed to elicit an explanation for Secor's demeanor, which was relevant to her credibility. See *Bailey*, 310 Mich App at 722. The relevance of this line of questioning is especially evident given defense counsel's contentions regarding Secor's credibility, arising from her demeanor on cross-examination, during his closing argument. Moreover, Secor's additional comments were unresponsive to the prosecutor's questions, and there is no indication of prosecutorial misconduct based on Secor's unresponsive answers. See *Jackson*, ___ Mich App at ___; slip op at 8.

In sum, there is no indication that the prosecutor's questioning of Secor violated defendant's right to a fair trial, *Bennett*, 290 Mich App at 475, and it is apparent that a curative instruction could have alleviated any prejudicial effect arising from the portions of Secor's testimony, elicited by the prosecution, that defendant contests on appeal. If a curative instruction could have alleviated any prejudicial effect, we cannot find an error requiring reversal. *Id*. at 476.

## C. REBUTTAL ARGUMENT

Next, defendant raises a preserved claim that statements made by the prosecutor during his rebuttal argument, which indicated that the testimony of Gorgis was sufficient to establish the value of the watch, invaded the province of the jury. Defendant's claim has no merit.

To prove the value element of false pretenses, $1,000 or more but less than $20,000, the prosecutor had to prove that the watch was worth at least $1,000. See MCL 750.218(4)(a); *Lueth*, 253 Mich App at 680-681. During his closing argument, defense counsel argued that the prosecutor had not proven the value of the watch, emphasizing that neither the watch itself, a receipt, expert testimony on the watch's value, nor an appraisal of the watch had been admitted at trial. During his rebuttal argument, the prosecutor stated:

> Counsel raises the value. . . . There is not one single requirement in the law that says that an expert must be provided to establish the value. It's sufficient that a person with knowledge testified to the value.

> There's not a jury instruction and the law does not require that an appraiser be qualified in order to establish the value.

> Direct testimony from the Cartier ambassador is sufficient to establish that value.

In context, it is apparent that the prosecutor addressed the issue of value in order to refute defense counsel's argument that the value of the watch had not been established. "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *Dobek*, 274 Mich App at 64. Accordingly, given defense counsel's statements, the prosecutor's comments did not constitute misconduct. Moreover, "[p]rosecutors are typically afforded great latitude regarding their arguments and conduct at trial. They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236 (citation omitted). As such, especially in light of the trial court's jury instructions, there is no indication that the prosecutor's statements invaded the province of the jury or improperly prejudiced defendant. See *People v Lemmon*, 456 Mich 625, 636-637; 576 NW2d 129 (1998).

Therefore, the prosecutor's statements did not violate defendant's right to a fair and impartial trial. See *Bennett*, 290 Mich App at 475.

## D. WITNESS VOUCHING

Lastly, defendant argues that the prosecutor impermissibility vouched for Whiteside's credibility during his closing argument, at which time the prosecutor indicated that Whiteside had no reason to lie, fabricate, or exaggerate in order to make a better case against defendant. We disagree.

"A prosecutor may argue from the facts that a witness is credible or that a witness is not worthy of belief." *Unger*, 278 Mich App at 240; see also *id*. ("[P]rosecutorial arguments regarding credibility are not improper when based on the evidence, even if couched in terms of

belief or disbelief."). Although "a prosecutor may not vouch for the credibility of his witnesses by implying that he has some special knowledge of their truthfulness[,] . . . a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004) (citations omitted).

Because the prosecutor did not claim that he had special knowledge regarding Whiteside's credibility, his comment was not improper vouching. See *id*. Moreover, when viewed in context, the prosecutor's remark was a proper response to defendant's testimony that he did not alter his driver's license number on the repair ticket, which directly contradicted Whiteside's testimony. See *Thomas*, 260 Mich App at 455. Additionally, even if the comment constituted improper vouching, there is no indication that the outcome of the case was affected by the prosecution's statement, as defendant's testimony and theory of defense diminished the significance of Whiteside's testimony regarding defendant's admissions, as defendant testified that he lied to the detective. See *Carines*, 460 Mich at 763; *Bennett*, 290 Mich App at 476. Finally, a timely objection and curative instruction would have alleviated any prejudicial effect of the prosecutor's statements, *Bennett*, 290 Mich App at 476, and the trial court did, in fact, instruct the jury both at the beginning and the end of trial that the jury was the sole judge of the witnesses' credibility, and that the lawyers' statements and arguments were not evidence, thereby curing the alleged error, see *People v Wood*, 307 Mich App 485, 506; 862 NW2d 7 (2014), vacated in part on other grounds 871 NW2d 154 (2015).

Therefore, we reject all of defendant's claims of prosecutorial misconduct.

## V. CUMULATIVE ERROR

Defendant argues that the cumulative effect of the aforementioned errors deprived him of his right to a fair trial. Because defendant has failed to establish any error, there is no possible cumulative effect warranting reversal. See *Gaines*, 306 Mich App at 310 ("[O]nly 'actual errors' are aggregated when reviewing a cumulative-error argument."); *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999) ("Because no errors were found with regard to any of the above issues, a cumulative effect of errors is incapable of being found.").

## VI. STANDARD 4 BRIEF

Finally, defendant alleges six issues in a supplemental brief filed *in propria persona* pursuant to Administrative Order 2004–6, Standard 4. Defendant's arguments are interrelated and essentially assert that (1) the trial court lacked jurisdiction over him, which rendered his conviction void, due to multiple deficiencies in the lower court record, and (2) defense counsel was ineffective in failing to raise these jurisdictional issues below. We disagree.

## A. STANDARD OF REVIEW

Because defendant failed to preserve these claims in the trial court, his claim is reviewed for plain error affecting his substantial rights. *Carines*, 460 Mich at 763-764. As stated *supra*, because no *Ginther* hearing was held, our review of defendant's ineffective assistance of counsel claim is limited to mistakes apparent from the record. *Jordan*, 275 Mich App at 667.

-11-

## B. ANALYSIS

In his brief, defendant cites Michigan and federal cases, constitutional provisions, court rules, and statutes, but he fails to provide any explanation regarding how the cited law applies to, or supports, his claims. A defendant abandons his claims when he fails to make a meaningful argument in support of his position. See MCR 7.212(C)(7); *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Therefore, because defendant has failed to adequately brief these arguments on appeal, we deem the issues abandoned.[7]

Furthermore, the lower court record received on appeal includes a complaint; a general information; a warrant; a district court register of actions; a statement of bindover to the circuit court; a preliminary examination transcript; a waiver of arraignment and election to stand mute or enter a not guilty plea; and a transcript from a plea hearing on June 5, 2014. We discern no legal deficiencies in any of these records and, as a result, have not found an error affecting defendant's substantial rights. See *Carines*, 460 Mich at 763-764. Moreover, even if we had found a deficiency, reversal is not warranted, as defendant has not demonstrated that the alleged errors "resulted in the conviction of an actually innocent defendant or . . . seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (quotation marks and citation omitted; second alteration in original).

## VII. CONCLUSION

Defendant has failed to establish that any of the claims of error raised in his brief on appeal and Standard 4 brief warrant relief.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Michael F. Gadola

---

[7] Defendant has also abandoned his ineffective assistance of counsel claim, as he failed to state this issue in his statement of questions presented. See MCR 7.212(C)(5); *People v McMiller*, 202 Mich App 82, 83 n 1; 507 NW2d 812 (1993). Nevertheless, there is no indication that defense counsel's failure to raise these claims in the trial court fell below an objective standard of reasonableness or prejudiced defendant. See *Vaughn*, 491 Mich at 669-671.