*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 20, 2019

Plaintiff-Appellee,

v

No. 340749
Wayne Circuit Court
LC No. 17-003013-01-FC

JARMAINE MAXWELL ROBINSON,

Defendant-Appellant.

Before: SAWYER, P.J., and O'BRIEN and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, three counts of assault with intent to murder (AWIM), MCL 750.83, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. Defendant was sentenced, as a fourth habitual offender, to concurrent sentences of 45 to 80 years' imprisonment for the second-degree murder conviction, 30 to 50 years' imprisonment for each of the AWIM convictions, and 2 to 5 years' imprisonment for the felon-in-possession conviction, to run consecutive to a five-year term of imprisonment for the felony-firearm conviction. We affirm.

## I. FACTS

On May 9, 2014, at approximately 3:00 a.m., Erik Walton, Chris Long, DeJuan Wright, and Daniel Fason[1] were together on Iliad Street in Detroit, Michigan. The four men had just returned from a bar, and were drinking alcohol and smoking marijuana near Long's white Chevrolet truck. Defendant, on foot, approached the four men and began conversing with Wright, whom defendant had known previously. Defendant informed Wright that someone broke into defendant's home, and asked Wright if he knew who might have committed the break-in. Fason exited Long's vehicle, and asked Wright whether everything was "okay," to which

---

[1] Fason is referred to throughout trial by his nickname, "Deezy."

-1-

defendant told Fason to stay out of it. Fason and defendant began to argue, but Wright defused the argument. Fason began to walk back to Long's vehicle when defendant said to Fason, "this is between me and [Wright], this ain't got s*** to do with you." This prompted Fason to confront defendant in an aggressive manner, at which time defendant produced a gun and shot Fason in the face at close range, killing him. Defendant then fired multiple gunshots at Long's vehicle, one of which struck Long in the shoulder. Defendant fled to Minnesota, but was later arrested, brought back to Michigan, and charged with the first-degree murder of Fason; three counts of AWIM for the assaults of Long, Wright, and Walton; felon-in-possession; and felony-firearm.

Rhonda Green, Fason's girlfriend, lived in a house on Iliad Street that was situated immediately in front of where Long's vehicle was parked during the shooting. Green went to bed shortly before 3:00 a.m., but awoke to the sound of gunshots and screaming. Green went outside and observed Fason lying dead in the street. Detroit Police Officers Brittany Williams and William O'Brien were the first officers to respond to the scene. Green informed Officer Williams that she did not see the shooting occur, but that she observed "an unidentified vehicle side [sic] – parked side-by-side with [Long's vehicle] facing northbound on Iliad and then the vehicle sped off." Green also gave a statement to Detroit Police Sergeant Alex Vinson at approximately 6:55 a.m. that same day, which Sergeant Vinson video recorded in his squad car. In her video interview with Sergeant Vinson, Green did not mention an unidentified vehicle parked next to Long's vehicle that sped off after the shooting.

During the first two days of the three-day trial, Green was unavailable to testify. The prosecutor stated that Green had been avoiding police because of an incident unrelated to defendant's case and that police had been unable to locate Green to testify. Officer Williams testified during the prosecution's case-in-chief; however, Officer Williams did not testify about Green's statement to her on the day of the shooting (i.e., that another unidentified vehicle was parked next to Long's vehicle and sped off after the shooting) because the prosecution objected on hearsay grounds. After Officer Williams testified, the parties agreed that if Green was available to testify the next day of trial, then Officer Williams could also be recalled to the stand for impeachment purposes.

The next day of trial, Green was available to testify; however, Officer Williams was not available because she was not feeling well. The parties stipulated, on the record, that once Green testified, Officer Williams's police report from the day of the shooting, which discussed Green's statement regarding the unidentified vehicle, would be read into the record. Green's testimony reflected her video interview with Sergeant Williams because Green did not mention the unidentified vehicle parked next to Long's vehicle that sped off after the shooting. Immediately after Green testified, the prosecutor read Green's statement that she gave to Officer Williams on the day of the shooting into the record, which discussed the unidentified vehicle.

After filing his claim of appeal, defendant also filed a motion for a new trial, arguing that the prosecution failed to provide defense counsel with a copy of Green's video interview with Sergeant Vinson, thereby constituting a violation of the prosecution's obligation to produce all exculpatory evidence favorable to defendant under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), and entitling defendant to a new trial. Defendant also argued that he received ineffective assistance of counsel when defense counsel (1) failed to conduct discovery

regarding Green's video interview with Sergeant Vinson, (2) failed "to interview and subpoena witnesses," (3) failed "to object to inadmissible hearsay testimony," and (4) failed "to argue self-defense to the jury." The prosecution responded that it had provided defense counsel with a copy of Green's video interview with Sergeant Vinson before trial, and that defendant's claims of ineffective assistance of counsel were without merit. The trial court held a hearing on defendant's motion for a new trial, and after hearing both parties' arguments, it entered an order denying defendant's motion for a new trial. Defendant now appeals.

## II. *BRADY* VIOLATION

Defendant first argues that the prosecution violated its duties under *Brady*, 373 US at 87, by failing to provide defense counsel with a copy of Green's video interview with Sergeant Vinson. We disagree.

Constitutional due process claims, including allegations of a *Brady* violation, are reviewed de novo. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007).

"The Supreme Court of the United States held in *Brady* that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), quoting *Brady*, 373 US at 87; see also MCR 6.201(B)(1) ("Upon request, the prosecuting attorney must provide each defendant . . . any exculpatory information or evidence known to the prosecuting attorney.").

To constitute a *Brady* violation, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Chenault*, 495 Mich at 149-150 (quotation marks and citation omitted). Stated differently, the elements of a *Brady* violation are as follows: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *Chenault*, 495 Mich at 155. "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. at 150 (quotation marks and citation omitted). Ultimately, "[t]he question is whether, in the absence of the suppressed evidence, the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. at 150-151 (quotation marks and citation omitted).

Defendant has failed to establish that the prosecution suppressed evidence. At trial, the prosecution explicitly stated that Green's video interview with Sergeant Vinson was turned over to defense counsel. Further, in response to defendant's motion for a new trial, the prosecution attached a copy of a discovery receipt of the prosecution's case file for defendant's case, which indicated that defense counsel picked up discovery, including "four CDs," on March 23, 2017—well before defendant's trial on September 5, 2017. The prosecution attached an affidavit sworn to by defense counsel, stating that he received a copy of Green's video interview with Sergeant Vinson before defendant's trial. Therefore, there is no evidence that the prosecution suppressed any evidence so as to constitute a *Brady* violation. *Chenault*, 495 Mich at 149-151, 155.

Even assuming that the prosecution failed to provide defense counsel with a copy of Green's video interview with Sergeant Vinson before trial, a review of that video footage reveals that the substance of Green's video interview with Sergeant Vinson was largely the same as her testimony at trial, both of which do *not* mention an unidentified vehicle parked next to Long's vehicle that sped away after the shooting. Thus, Green's interview with Sergeant Vinson was not favorable to or exculpatory for defendant because it fails to support defendant's theory at trial—that an unidentified vehicle shot at Fason, Long, Wright, Walton, and defendant in an apparent drive-by shooting. *Chenault*, 495 Mich at 149-151, 155.

Similarly, because Green's video interview with Sergeant Vinson mirrored Green's trial testimony and was simply cumulative to the evidence presented at trial, defendant cannot establish materiality—i.e., "that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Chenault*, 495 Mich at 150. In fact, Green's statement to Officer Williams—which *does* reference an unidentified vehicle parked next to Long's vehicle that sped away after the shooting—was read into the record at trial. Therefore, not only does the record reflect that defense counsel was aware of Green's video interview with Sergeant Vinson before trial, but it also shows that the prosecution provided defense counsel with all exculpatory evidence that was favorable to defendant in accordance with the prosecution's obligations under *Brady*, 373 US at 87. Accordingly, defendant cannot establish that the prosecution committed a *Brady* violation so as to entitle defendant to a new trial. *Chenault*, 495 Mich at 149-151, 155.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was deprived of the effective assistance of counsel when defense counsel (1) failed to conduct discovery regarding Green's video interview with Sergeant Vinson, (2) failed to interview and subpoena Green as a witness; (3) failed to object to Officer O'Brien's testimony regarding Wright's hearsay statement, and (4) failed to advance a theory of self-defense at trial. We disagree.

As an initial matter, defendant abandoned his claims of error regarding Officer O'Brien's testimony and the issue of self-defense. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. . . ." *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). "Failure to brief a question on appeal is tantamount to abandoning it." *Id.*; see also *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004) ("Such cursory treatment constitutes abandonment of the issue."). Defendant failed to cite any legal authority regarding the admissibility of Officer O'Brien's testimony in the context of the hearsay rule. Nor did defendant provide any legal authority in support of his argument that defense counsel was ineffective for failing to argue that defendant acted in self-defense. Accordingly, defendant has abandoned those arguments on appeal. *Kevorkian*, 248 Mich App at 389.

Regardless, defendant failed to rebut the presumption that defense counsel was effective with respect to each of defendant's four claims of error.

"[A] defendant must move in the trial court for a new trial or an evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), citing *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

In defendant's motion for a new trial, defendant argued that he was deprived of the effective assistance of counsel when defense counsel (1) failed to conduct discovery regarding Green's video interview with Sergeant Vinson, (2) failed to interview and subpoena witnesses; (3) failed to object to inadmissible hearsay testimony, and (4) failed to argue self-defense to the jury. Defendant's motion failed to identify which witnesses defense counsel failed to interview and subpoena, and also failed to identify the hearsay statement defense counsel failed to object to. Defendant's brief in support of his motion for a new trial only discusses defendant's first claim of ineffective assistance of counsel—i.e., defense counsel's alleged failure to request discovery to obtain Green's video interview with Sergeant Vinson. That is, defendant failed to adequately explain how defense counsel was ineffective with respect to (1) interviewing and subpoenaing witnesses, (2) objecting to inadmissible hearsay, and (3) advancing a theory of self-defense at trial. Therefore, while defendant moved for a new trial on the basis of ineffective assistance of counsel, defendant failed to preserve the aforementioned claims of error.

"Generally, whether a defendant had the effective assistance of counsel is a mixed question of fact and constitutional law." *Heft*, 299 Mich App at 80 (quotation marks and citation omitted). "This Court reviews findings of fact for clear error and questions of law de novo." *Id*. "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). Review of unpreserved claims of error are limited to "errors apparent on the record." *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

Effective assistance of counsel is presumed, and criminal defendants have a heavy burden of proving otherwise. *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). When claiming ineffective assistance of counsel, it is a defendant's burden to prove "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016), citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Trial "counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *Unger*, 278 Mich App at 242. Therefore, there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance," and this Court must consider "whether the challenged action (or failure to act) might be considered sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 62; 826 NW2d 136 (2012); see also *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008) ("A failed strategy does not constitute deficient performance.").

## A. FAILURE TO CONDUCT DISCOVERY

Defendant argues that defense counsel failed "to make a single discovery" request for Green's video interview with Sergeant Vinson, thereby depriving defendant of the effective assistance of counsel. However, the lower court record reflects that defense counsel received a

copy of Green's video interview with Sergeant Vinson before trial. Therefore, defendant's claim that defense counsel was ineffective for failing to make a discovery request for Green's video interview with Sergeant Vinson lacks merit or factual support. *Solloway*, 316 Mich App at 188.

## B. FAILURE TO INTERVIEW AND SUBPOENA A WITNESS

Next, defendant argues that defense counsel was ineffective for failing to interview or subpoena Green before trial. Defendant asserts that Green was arrested "as a material witness[,] on the third [sic: second] day of trial," incarcerated overnight, and brought in to testify the next day. Defendant also asserts that Green was "[t]raumatized" from this experience, and that Green "changed her testimony completely in contradiction of her [earlier] statements" to Officer Williams and Sergeant Vinson. However, there is no support in the lower court record for these assertions. Instead, the record indicates that Green received an investigative subpoena before trial, and had been avoiding the police and the prosecution due to an incident unrelated to defendant's case. At trial, the prosecutor stated that she called Green the night before the last day of trial, and that police officers picked Green up the morning that she testified. Thus, the record does not support defendant's assertion that defense counsel failed to interview Green before trial, nor can it be said that defense counsel was ineffective for failing to locate an uncooperative witness. The record also does not support defendant's assertion that Green was a traumatized witness who changed her trial testimony because she was incarcerated the night before she testified. See *Unger*, 278 Mich App at 253 (review of unpreserved claims of ineffective assistance of counsel is limited to errors apparent from the record).

Further, Green's testimony reflected and was consistent with the statement she gave in her video interview with Sergeant Vinson on the morning of the shooting. Green did not see the shooting firsthand; rather, she woke up to the sound of gunshots, went outside, and observed Fason lying dead in the street. At no point, during either her video interview with Sergeant Vinson or her trial testimony, did Green mention another vehicle being involved in the shooting. To the extent that Green's trial testimony contradicted her statement to Officer Williams, Officer Williams's recording of Green's statement was read into the record pursuant to the parties' stipulation. Therefore, even if defense counsel did not interview Green before trial, it cannot be said that this alleged error was outcome determinative because defendant had the opportunity to impeach Green by having her prior statement to Officer Williams read into the record. See *Solloway*, 316 Mich App at 188 (a defendant claiming ineffective assistance of counsel must establish an outcome determinative error constituting prejudice). Accordingly, defendant has failed to rebut the presumption that defense counsel was effective. *Id*.

## C. FAILURE TO OBJECT TO HEARSAY

Defendant also argues that defense counsel was ineffective for failing to object to Officer O'Brien's testimony regarding Wright's hearsay statement. Hearsay is testimony relating to the unsworn, out-of-court assertions of a person (other than the declarant) that are offered to prove the truth of the matter asserted. MRE 801(c). Hearsay is generally inadmissible, MRE 802, but this rule is subject to several exemptions and exceptions under the rules of evidence, MRE 801 to MRE 805. One such exception to the hearsay rule is the "excited utterance" exception, which allows for the admissibility of "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2).

At trial, Officer O'Brien testified that, when he arrived on the scene, Wright was frantically screaming, "They shot Deezy." Officer O'Brien also testified that Wright had "an extreme amount of blood on him," that Wright was "extremely hyper and excited," and that Wright "walked off in a really frantic" state. Given that Wright made the statement, "they shot Deezy," under the stress of excitement, which was caused by the shooting of Fason (also known as Deezy), Wright's statement was admissible under the excited utterance exception to the hearsay rule. Therefore, it was objectively reasonable for defense counsel not to object to Officer O'Brien's testimony because any objection to Officer O'Brien's testimony regarding Wright's statement would have been futile. MRE 803(2); *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014) ("Counsel is not ineffective for failing to advance a meritless position or make a futile motion.").

## D. FAILURE TO ARGUE SELF-DEFENSE

Finally, defendant argues that defense counsel was ineffective for failing to argue at trial that defendant acted in self-defense. However, defendant testified at trial that while he was engaged in a conversation with Wright and Fason near Long's vehicle, an unidentified vehicle approached them and fired multiple gunshots at them, killing Fason. Defendant denied that he and Fason got into an argument, or that Fason confronted defendant. Instead, defendant maintained his innocence. Thus, had defense counsel argued that defendant acted in self-defense, defense counsel would have completely contradicted defendant's own testimony. A self-defense theory would have also undermined defense counsel's entire theory at trial—that Fason was killed in a drive-by shooting—and would not have explained why Long was shot in the shoulder since defendant did not assert any physical threat by Long. Therefore, defense counsel's decision not to pursue a theory of self-defense was a matter of sound trial strategy and did not constitute ineffective assistance of counsel. See *People v Bass*, 317 Mich App 241, 278; 893 NW2d 140 (2016) ("We will not substitute our judgment for that of counsel on matters of trial strategy.").

Accordingly, defendant's four claims of ineffective assistance of counsel lack merit.

## IV. DENIAL OF REQUEST FOR AN ADJOURNMENT

Defendant argues that the trial court erred in denying defendant's request for an adjournment so that he could cross-examine Officer Williams. We disagree.

Generally, an issue is properly preserved if it is raised, addressed, and decided by the trial court. *People v Dupree*, 486 Mich 693, 703; 788 NW2d 399 (2010). At trial, defendant did not object to Officer Williams's police report regarding Green's statement on the day of the shooting being read into the record in lieu of Officer Williams being recalled to testify. In fact, defendant and defense counsel agreed, by stipulation, to Officer Williams's police report being read into the record in lieu of her testifying again. Because defendant failed to object or request an adjournment, the issue is unpreserved for appellate review.

Generally, the trial court's decision whether to grant a continuance or an adjournment is reviewed for an abuse of discretion. *People v Jackson*, 467 Mich 272, 276, 277 n 5; 650 NW2d

665 (2002). A court abuses its discretion when its decision is "outside the range of principled outcomes." *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012).

However, unpreserved claims of error are reviewed for plain error affecting a defendant's substantial rights. *People v Kowalski*, 489 Mich 488, 505-506; 803 NW2d 200 (2011), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Defendant has the burden of persuasion as it pertains to prejudice. *Id*. Once a defendant demonstrates the three requirements, "an appellate court must exercise its discretion in deciding whether to reverse." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted).

Defendant's assertion, that the trial court denied his request for an adjournment, is erroneous because a request was never made. Officer Williams testified on the second day of trial. Contrary to defendant's assertion that he was not given an opportunity to cross-examine Officer Williams, both the prosecution and defense counsel had an opportunity to question her. Defense counsel attempted to question Officer Williams about the statement that Green gave to Officer Williams regarding the unidentified vehicle speeding away from Long's vehicle immediately after the shooting; however, the trial court ruled that Green's statement to Officer Williams was inadmissible hearsay.

After Officer Williams testified, defense counsel sought to have Green's statement to Officer Williams admitted under the excited utterance exception to the hearsay rule, but the trial court again ruled that Green's statement was hearsay and not admissible under any exception or exclusion. Before resting its case-in-chief, the prosecution informed the trial court that Green might be available to testify the next day of trial, but was unsure whether Green would actually be available to testify. The trial court stated that if Green was available to testify, it would allow the prosecution to reopen proofs and call Green to testify. Defense counsel agreed; however, in the event that Green testified, defense counsel requested that Officer Williams also be made available to testify again for impeachment purposes. The trial court and the prosecution agreed. However, while Green was available to testify the next day of trial, Officer Williams did not appear because she was not feeling well. However, both parties stipulated to portions of Officer Williams's police report containing Green's statement being read into the record in lieu of Officer Williams being recalled as a witness. Defendant also specifically verified his agreement to this stipulation on the record.

Waiver is "the intentional relinquishment or abandonment of a known right." *Kowalski*, 489 Mich at 503 (quotation marks and citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation marks and citation omitted). "To hold otherwise would allow defendant to harbor error as an appellate parachute." *People v Shuler*, 188 Mich App 548, 552; 470 NW2d 492 (1991). Therefore, defendant waived any claim of error with

respect to Officer Williams not being available to testify again for impeachment purposes. *Kowalski*, 489 Mich at 503; *Shuler*, 188 Mich App at 552.

Further, there is no evidence in the record indicating that defendant ever requested an adjournment because of Officer Williams's unavailability to testify again. Therefore, the trial court cannot be said to have abused its discretion in denying defendant's request for an adjournment where no request was ever made. *Jackson*, 467 Mich at 276.

Defendant relies on *People v Gioglio (On Remand)*, 296 Mich App 12, 26; 815 NW2d 589 (2012), vacated on other grounds 493 Mich 864 (2012), in arguing that he was denied his fundamental right to cross-examine Officer Williams. However, the issue in *Gioglio* involved whether defense counsel's failure to cross-examine the complaining witness fell below an objective standard of reasonableness in the context of ineffective assistance of counsel. *Id*. That is wholly different from the circumstances presented here. First, defendant frames his argument as an error committed by the trial court, not as an error committed by defense counsel. Second, even in reviewing defendant's claim in the context of defendant receiving ineffective assistance of counsel, defense counsel's stipulation to have Officer Williams's police report of Green's statement read into the record accomplished defense counsel's goal of impeaching Green's trial testimony. Green's statement to Officer Williams suggested that the shooting was a drive-by shooting rather than one committed by a single perpetrator on foot, which contradicted Green's trial testimony. Therefore, to the extent defendant argues that defense counsel was ineffective for failing to request an adjournment so that Officer Williams could testify for impeachment purposes, such a decision was a matter of trial strategy that defendant explicitly agreed to on the record. See *Unger*, 278 Mich App at 242 ("We will not substitute our judgment for that of counsel on matters of trial strategy[.]"); *Kevorkian*, 248 Mich App at 413-415 (rejecting a claim of ineffective assistance of counsel premised on defense strategy acceded to by the defendant).

## V. JURY INSTRUCTION

Finally, defendant argues that the trial court erred in instructing the jury regarding defendant's right not to testify. We disagree.

A party must object or request a given jury instruction to preserve the error for review. *People v Head*, 323 Mich App 526, 537; 917 NW2d 752 (2018). Because defendant failed to object to the jury instructions that were given, the issue is unpreserved for appellate review. Further, defendant waived his ability to challenge the jury instructions because defense counsel approved the instructions before the case was submitted to the jury.

Generally, this Court reviews a claim of instructional error involving a question of law de novo. *Dupree*, 486 Mich at 702.

However, this Court reviews unpreserved instructional errors for plain error affecting a defendant's substantial rights. *Kowalski*, 489 Mich at 505-506. As stated above, "[i]n order to avoid forfeiture under a plain-error analysis, defendant must establish (1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected defendant's substantial rights." *Id*. at 505. The plain error must have prejudiced defendant by affecting the outcome of the proceedings. *Carines*, 460 Mich at 763. "Even if defendant could satisfy these requirements,

reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Kowalski*, 489 Mich at 505-506 (quotation marks and citation omitted).

As an initial matter, defendant fails to cite any legal authority supporting his position. Therefore, defendant abandoned this argument on appeal. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").

Even if this issue had not been abandoned, defendant waived his ability to challenge the trial court's jury instructions on appeal. "Counsel's affirmative expression of satisfaction with the trial court's jury instruction waive[s] any error." *People v Chapo*, 283 Mich App 360, 372-373; 770 NW2d 68 (2009), citing *People v Lueth*, 253 Mich App 670, 688; 660 NW2d 322 (2002) ("By expressly approving the [jury] instructions, defendant has waived this issue on appeal."). Defense counsel agreed to the jury instructions before and after the trial court issued its final instructions. Therefore, defendant may not now challenge the trial court's jury instructions on appeal. *Chapo*, 283 Mich App at 372-373.

Notwithstanding this waiver, defendant also failed to establish that the trial court committed plain error affecting his substantial rights because the trial court never instructed the jury regarding defendant's right not to testify. The only portion of the record that defendant cites in support of his position is when the trial court conducted voir dire with defendant, when waiving his right not to testify. The trial court's inquisition occurred *outside the presence of the jury*. Once the jury returned to the courtroom, defendant testified, without the trial court giving any instructions to the jurors on how they should consider defendant's testimony. Nor did the trial court mention defendant's right not to testify in its final jury instructions. Accordingly, defendant's assertion that the trial court gave an unnecessary jury instruction regarding his right not to testify is without merit or a factual predicate.

Affirmed.

/s/ David H. Sawyer
/s/ Colleen A. O'Brien
/s/ Anica Letica